## Charles L. Boalt *v*. Charles S. Brown.

H. having agreed with F. to loan him $500, on his note, to be signed by B., as his surety, a note in the following terms was drawn up and signed by F.: " We jointly and severally promise to pay H. L. H. five hundred dollars on ten days' notice, at ten per cent."

This note was sent to B. for his signature, who, not having ink at hand, signed it in pencil and returned it to F., with a message, stating that he would, at any time, " ink over " his signature, if desired. F. then presented the note to H. informing him of B.'s promise, which he (F.) agreed should be performed. H. then said he wished the words " interest to be paid annually" were in the note, and at his request, those words were added at the end of the note, by F., who then delivered the note, and received the money, the parties intending no fraud upon B., and H. supposing the note to be valid. B. was not present, and knew nothing of this alteration. Some weeks afterward, H. met B. near the store of F., and requested him to " ink over his signature to that note," assigning as a reason for the request, that the pencil signature might wear off. B. went with him into the store of F., and, in his presence, did trace over his pencil signature with ink, without reading the note or having any knowledge of the alteration which had been made. Upon a suit brought by the assignee of H. against the surety B., Held : That the words added to the note were material, and that, under the foregoing state of facts, the note never became, in either form, the valid note of B.

Error to the district court of Huron county.

H. L. Hurlbut agreed with John H. Foster to loan him $500 for at least ten days, on a note for that sum and interest at the rate of ten per cent., the note to be payable on ten days' notice, and to be signed by Foster as principal, and the defendant, Brown, as surety.

Foster and Hurlbut resided in Norwalk. Brown resided in Ridgefield. Foster drew up and signed a note in the following terms :

" Norwalk, November 3, 1857.

" We jointly and severally promise to pay H. L. Hurlbut five hundred dollars, on ten days' notice, at ten per cent.

" John H. Foster."

With the note in this form, Foster sent his son to Brown, in Ridgefield, where he resided, to procure his signature thereto. The messenger found Brown, and got his signature to the note immediately under Foster's, but having no pen

and ink at hand, Brown wrote his signature in pencil, and handed it thus signed back to the messenger, saying: " tell your father that when I come to Norwalk, I will ink over my signature with a pen, if desired to do so." The messenger carried the note, with Brown's message to Foster, and the latter immediately presented the note to Hurlbut, who objected to Brown's signature being in pencil; but Foster told Hurlbut of Brown's promise to ink over his signature when he came to Norwalk, if desired to do so, and promised that Brown would do it. Hurlbut then told Foster that he wished the words " interest to be paid annually," were in the note, and requested Foster to insert them. Thereupon Foster wrote those words at the end of the note, before, and on the same line with his signature thereto, and, handing the note thus altered to Hurlbut, asked him if that was satisfactory. Hurlbut replied that it was, and put the note in his pocket, and let Foster have the money. Brown was not present, and knew nothing of the alteration. Neither Hurlbut nor Foster intended any fraud upon Brown; and Hurlbut supposed the note to be valid. All this was on the 3d of November, 1857. Between this time and the 1st of December, 1857, Hurlbut twice called on Foster and asked him if Brown had come to Norwalk yet, adding that he wished him to ink over his signature to the note. On or about the 1st of December, 1857, Hurlbut met Brown near Foster's store, in Norwalk, and asked him to " ink over his signature to that note," assigning no other reason for the request than that Brown's signature, being in pencil, might wear off, but not then, nor at any other time, telling Brown of the alteration of the note. Brown replied to Hurlbut that his signature was good as it was, but that he was willing to ink it over, and, taking the note from Hurlbut, he went to a desk, and then and there, with pen and ink, blacked over his pencil signature, in the presence of Foster, and then handed the note back to Hurlbut. When Brown thus inked over his signature, he had no knowledge or information of the alteration of the note, or of the conversation which had passed between Foster and Hurlbut at the time the alteration was made. He might, if

he had taken the care to do so, have read the note and dis-covered the alteration, but he did neither. He only noticed that the note was in Foster's handwriting, and that the pen-cil signature was his own, and supposing the note to be then precisely as it was when he affixed his pencil signature thereto; and he had no knowledge or information to the contrary, until April, 1858, when the note had passed to the plaintiff. Brown was never anything more than a surety on the note. Hurlbut knew that when the note was first presented to him by Foster. There was no new consideration for Brown's inking over his signature as he did. The only consideration for the note as signed by Brown with pencil, or as altered by Foster, at Hurlbut's request, was the five hundred dollars re-ceived by Foster of Hurlbut at the date of the note.

Boalt, the plaintiff in error, as assignee, became the holder and owner of the note previous to April 6, 1858, and on that day gave notice to Foster and Brown to pay the note and in-terest to him at the expiration of ten days from that time.

Payment not having been made, Boalt brought suit on the note, in the court of common pleas of Huron county, April 21, 1858, against Foster, Brown and Hurlbut.

At the October term, 1859, of the common pleas, after a motion for a new trial was overruled, judgment was entered in favor of Brown on the facts stated, as found in a special verdict, and shown by the record; and Boalt excepted, and to reverse that judgment, filed his petition in error in the dis-trict court.

The judgment of the common pleas was affirmed in the dis-trict court, at its May term, 1860; and to reverse such judg-ment of affirmance, a petition in error was filed in this court.

*Charles L. Boalt*, plaintiff in error, argued:

I. The alteration made in the note after Brown signed it in pencil, and before he inked his pencil signature over, by the insertion of the words "interest to be paid annually," was not a material alteration.

The materiality of the alteration depends upon the con-struction to be given to the language of the note "five

hundred dollars, on ten days' notice, at ten per cent." "At ten per cent," may as well mean ten per cent. payable annually, as ten per cent. when the principal sum is paid, or ten per cent. to accumulate. Either construction would stand consistently with the language of the note; and no default would accrue upon the note, unless demanded, or notice were given.

The insertion of words in a bill which do not affect the responsibility of the parties, will not vitiate it. *Marion* v. *Petit*, 1 Camp. 82n; 1 Harrison's Dig. 1249.

II. If the alteration was material, it was made under such circumstances that the note, after delivery, was not void, as to Brown.

1st. The note in the hands of Foster, and the message sent with it, constituted Foster the agent of Brown, and the facts authorize the presumption of authority to make the alteration. And if not, Hurlbut, having acted in the belief, in good faith, that Foster had the authority, and in that belief having advanced his money upon the delivery of the note, will be protected. *Downes* v. *Richardson*, 5 B. & A. 674; 1 D. & R. 332; Bayl. Bills, 42, 92; 1 Harrison's Dig. 1249, 1253; *Sherrington* v. *Jermyn*, 3 Carr. & P. 374; *Fullerton* v. *Sturges*, 4 Ohio St. Rep. 529; *Johnson* v. *Garnet*, 2 Chit. 122; *Hale* v. *Russ*, 1 Greenl. 334; *Ogle* v. *Graham*, 2 Penn. Rep. 132; *Agawam Bank* v. *Strever*, 18 N. Y. Rep. 512; *Johnson* v. *Jones*, 4 Barb. 369; 3 Conn. 442; *Lambert & Pollard* v. *Carroll*, Wright's Rep. 108; 5 Ohio Rep. 222, 256; 2 McLane, 589; 16 Pet. 1.

2d. If the note had been delivered and taken effect, the assent of Hurlbut, under such a misapprehension, would not have avoided the note. *Fullerton* v. *Sturges*, 4 Ohio St. Rep. 529; *Huntington et al.* v. *Finch & Co.*, 3 Ohio St. Rep. 445; *Smith* v. *McGowan*, 3 Barb. 404; *Granite Railway* v. *Bacon*, 15 Pick. 239; *Beaman* v. *Russell*, 20 Verm. 205; *Bliss* v *McEntire*, 18 Id. 466; *Montgomery R. R.* v. *Hurst*, 9 Ala. 513; Greenl. Ev., sec. 564.

There are many cases where it has been decided that an alteration by one party, to make the instrument conform to

the original intention of the parties, does not vitiate. *Hervey,* v. *Hervey,* 3 Shepl. 357; *People* v. *Murry,* 1 Denio, 239; *Boyd* v. *Brotherson,* 10 Wend. 93; *Hatch* v. *Hatch,* 9 Mass. 307; *Hamelin* v. *Bruck,* 6 Queen's B. R. 306; *Fubb* v. *Madding,* Minor's Rep. 129 : and more directly to the purpose, as to misapprehension, is the case of *Adams and another* v. *Frye,* 3 Metc. Rep. 103. See, also, *Hale* v. *Russ,* 1 Greenl. 334; *Ogle* v. *Graham,* 2 Penn. Rep. 132; 6 Ala. 513; 8 Dana, 98; *Bowers* v. *Jewell,* 2 N. H. 542; *Prescott* v. *Gratz,* 6 Wheat. 502; *Whiting* v. *Daniel,* 1 H. & M. 391; *Beasy* v. *Haines,* 4 Whart. 17; *Foust* v. *Renno,* 8 Stat. Rep. 378; *Thornton* v. *Appleton,* 29 Maine, 298; *Ford* v. *Ford,* 17 Pick. 418; *Smith* v. *Durham,* 8 Pick. 249; Story's Eq., sec. 110 to 183.

3d. Treating the note in the hands of Foster as an unexecuted power, the subsequent delivery of it, with the alteration, was a good execution of the power, and the addition, so far as Brown is affected by it, may be rejected. And the court, in the exercise of their equitable powers, will uphold the transaction, and enter a judgment upon the respective liabilities of the parties. Willard Eq. Jur. 83; Story's Eq., secs. 169 to 183.

III. If the note became void by reason of the alteration, Brown's inking over his signature made it valid. *Webb* v. *Daggett,* 2 Barb. 9; *Greenough* v. *Smead,* 3 Ohio St. Rep. 421; 2 Parsons on Contr. p. 7, sec. 2; Parsons' Merch. Law, p. 14; 18 N. Y. Rep. 502; *Dimond* v. *The Providence, Warren and Bristol R. R. Co.,* 2 Ames' (R. I.) Rep. 130; *Henkle* v. *The Royal Ex. Assurance Co.,* 1 Ves. Sr. 317; *Marquis of Townsend* v. *Stravgroom,* 6 Ves. 333–4; *Beach* v. *Sheldon,* 14 Barb. S. C. Rep. 66; Kent's Com. 482; Story's Eq., sec. 141, *Taylor* v. *Fleet,* 4 Barb. Rep. 95; *Preston* v. *Mann,* 25 Conn. 128; *Reynolds and wife* v. *Shirley,* 7 Ohio Rep. pt. 2, p. 39.

*J. M. Root,* for defendant in error, argued:

1. The addition of the words "interest to be paid annually" to the note as originally drawn, was a material alteration, and, under the circumstances, rendered the note void as

to Brown. *Sturges & Hale* v. *Williams*, 9 Ohio St. Rep. 443.

Brown, being a surety merely, has a right to stand upon the very letter of his contract. There can be no construction or equity against him. *Hall* v. *Williamson's adm'r*, 9 Ohio St. Rep. 17; *The State* v. *Medary et al.*, 17 Ohio Rep. 554; *Brickhead* v. *Brown*, 5 Hill, 634; *McGovney* v. *The State*, 20 Ohio Rep. 93.

The note was perfect when Brown, having signed it in pencil, sent it back with the messenger to Foster. And there was nothing in the note, nor in the message he sent with it, to authorize any one, either expressly or by implication, to make the alteration in question. Hurlbut's mistaken belief in regard to Foster's authority over the note could not enlarge that authority or Brown's liability. Brown neither did nor said anything to lead Hurlbut into the mistake. The good or bad faith of Foster or Hurlbut, or both, could not increase their power over the note, or change Brown's contract, as expressed by it.

2. Brown's inking over his signature after the alteration of the note did not make it valid. That act of Brown was no assent on his part to the alteration, under the circumstances; and the promise by Foster to Hurlbut that Brown would thus ink over his signature, has nothing to do with the question. Brown was not a party to that agreement, and did not act in pursuance of it.

To say that Brown, by inking over his signature, thereby assented to the alteration, when he was totally ignorant that it had been made, would seem to be preposterous. 1 Parsons on Contr. 506; *Howe* v. *Peabody*, 2 Gray's Rep. 557; *Merrimac County Bank* v. *Brown*, 12 N. H. Rep. 320; *Fowler* v. *Brooks*, 13 N. H. Rep. 340.

3. The original action was upon the note as altered, not as it was when Brown first signed it. That being the case, the plaintiff in error is not entitled to any " equity powers " of the court to enforce the note against Brown as though it had not been invalidated by the alteration. Foster and Hurlbut were liable upon one note, and Brown, if liable at all, upon

25

another and different note. The two cases could not be properly joined in one action.

4. If Brown's inking over his signature were to be held equivalent to putting his name to the altered note, yet he did not thereby become a maker of the altered note, but only a guarantor without consideration, and was entitled to a verdict and judgment in the original action; for Brown did not ink over his signature in pursuance of an agreement or intention to become responsible on the altered note from its date and delivery. The intention is the subject of proof. *Brown* v. *Carpenter*, 9 Ohio Rep. 139; *Stage* v. *Olds*, 12 Ohio Rep. 158; *Champion* v. *Griffith*, 13 Ohio Rep. 228; *Gale's adm'r* v. *Van Arman*, 18 Ohio Rep. 336.

SCOTT, J.—Do the facts of this case, as shown by the record, make a case of contract between Brown, the surety, and Hurlbut, the payee of the note? Or, in other words, was there a valid signing and delivery of the note, in any form, by Brown?

It is clear that the note, in the form in which it was signed by Brown, in pencil, was never delivered to the payee. He declined to accept it in this form; and, at his instance, the words "interest to be paid annually" were added to it, *before delivery*, in the absence of Brown, and without his knowledge or assent. Foster had no express authority from Brown to modify the terms of the instrument, nor do the circumstances show an implied authority. For it is not the case of the filling up of a blank, with words necessary to give effect to the instrument, but of the addition of further terms to a perfect instrument. And this addition materially changed the rights and obligations of the parties; for it gave the payee the right to demand and collect interest annually, without any demand for the principal; while, without the clause thus added, interest could only have been collected with the principal, and neither without ten days' previous notice. The delivery of the note, in its altered form, by Foster, and its acceptance by Hurlbut, and his delivery to Foster of the money agreed to be loaned, perfected a contract

between the parties to the transaction. But Brown was no party to this contract. He had never assented to its terms. And Hurlbut *knew* that the alteration of the note had been made at his own instance, without Brown's knowledge, and without asking for his consent. The case, then, so far, stands thus: Brown had assented to, signed and authorized the delivery of *one* note; and Hurlbut, declining to accept *it,* did accept *another*, which he knew Brown had never assented to, had never signed, and had never seen. In all this there is evidently no contract; for the parties, Brown and Hurlbut, did not mutually assent to the same terms. Brown's note was never delivered, and the note which was dellvered was not Brown's.

But was the assent of Brown to the terms of the altered note, subsequently given, by the act of "*inking over*" his pencil signature? It is certain that by this act, Brown did not *intend* to express any such assent—for he was, at the time, wholly ignorant that any change had been made in its terms, since his signature had been affixed to it, in pencil. Neither Foster nor Hurlbut, though both were present, informed him of the alteration, which they had made without his knowledge. He was not asked by Hurlbut to *become* a party to a note, to which he was then a stranger, but to give *durability* to his pencil signature, *previously affixed*, by tracing it over with ink; and the reason assigned for the request was, that the signature, being in pencil, might wear off. This he had promised to do, when he first signed the instrument in pencil, and his intentions, in the fulfillment of his promise, could not have had any reference to other promises made by Foster of which he had no knowledge. Hurlbut asked him to perform merely what he had himself promised to do, without communicating to him the fact that Foster had promised that he should do more.

It is claimed, however, that Brown must be held to have assented to the terms of the altered note, although, in fact, he intended no such assent, because, having opportunity to read the note, and discover the alteration, it was his own negligence that he did not do so, before blacking over his

signature with ink. Hurlbut had asked him "to ink over his signature to *that note.*" And Brown, upon taking the note to the desk for that purpose, saw that it was in Foster's hand-writing, and that his own genuine pencil signature was affixed to it, and, without looking farther, he proceeded to the blackening of the signature. Was it his duty to suspect that Hurlbut had altered its terms, or procured them to be altered, without his knowledge, after the note had been signed by him? Might he not assume that Hurlbut had not, either through gross ignorance, or disregard of his rights, permitted such an interference with them? And that the note which Hurlbut handed to him, and represented to be "*that note,*" was the *same* one which he had previously read and signed, and not *another?* Hurlbut, at least, has no right to complain, that Brown confided in him as a man of ordinary intelligence, and common honesty. And the character of the instrument sued upon is such that Hurlbut's assignee simply stands in his shoes. It is clear that the terms of the altered note were never assented to by the surety, Brown; nor is he shown to have said or done anything which would justify the payee, Hurlbut, in presuming such assent. In the absence of such assent there is no contract between the parties.

And this difficulty can not be obviated by the facts that the alteration was not made with *intent* to defraud Brown, and that Hurlbut when he accepted the note, with full knowledge of the facts, supposed, without reason, that it was good and valid.

Judgment of the district court affirmed.

Sutliff, C. J., and Peck, Gholson and Brinkenhoff, JJ., concurred.