Dickman, J.
The original action was founded on a promissory note, with warrant of attorney to confess judgment thereon, dated June 18th, 1874, and payable one day after date, for the sum of one thousand dollars, with eight per cent interest, and was commenced in the court of Common Pleas of Crawford County, by the defendant in error, *258 Philip Bauer, against the plaintiff’s in error, Jefferson-W. Davis, John Dodane, William F. Crowe and Peter Bauer. It is alleged in the original petition, that the note was made payable to one John Gr. Birk, and was executed by Davis in connection with the plaintiff and the defendants Dodane, Crowe and Peter Bauer, as apparent joint and several makers, but, that in fact, all the signers of the note, except Davis, executed it merely as sureties for him. It is' further alleged, that upon the non-payment of the note at maturity by Davis, the plaintiff paid off the same with the interest thereon, on the 7th day of September, 1874, since which time, nothing has been paid him on the note by Davis, or either of the other signers of the instrument.
Davis filed a separate answer, setting up several special defenses. No answer was filed by either Dodane or Peter Bauer, and no default was taken against them. Crowe made the same defenses as Davis, but, under the direction of the court, no verdict was returned for or against him. Practically there was no issue raised in the cause, save as to the liability of Davis. A verdict was returned for the plaintiff, Philip Bauer, and the judgment rendered thereon was affirmed by the district court. To reverse the judgment of the district and common pleas courts, this proceeding is prosecuted.
The evidence embodied in the record discloses a very different case from that set up in the petition. "At the date of the note in question, Jefferson W. Davis was treasurer of the school funds of the Union schools of Crestline, Ohio. J. A. Thoman & Co. were at that date bankers in Crestline, and Davis kept his bank account with them. Their bank was then owing him as an individual depositor some $675, while on his account as such treasurer, there was a balance to his credit, of over twelve hundred dollars. While Davis was treasurer he was accustomed to pay the teachers in the schools, by checks drawn on Thoman & Co., but, on the 18th day of June, 1874, he had money enough to pay their salaries then due, without drawing on his bank deposits. On that day, Henry Thoman, then a member of the firm of *259 J. A. Thoman & Go., called upon Davis at his place of business in Crestline, for the purpose of raising $1,000, to be used in paying debts of the firm, and among them sundry checks drawn upon them in payment of teachers’ salaries. He had with him an unexecuted joint and several promissory note for $1,000, dated June 18th, 1874, containing a power of attorney to confess judgment, and made payable one day after date, to the order of J. A. Thoman & Co., at their banking house in Crestline, with eight per cent, interest after maturity. Henry Thoman requested Davis to sign the note, and agreed to obtain four other signatures thereto, representing at the time, that Thoman & Co. should in fact be the principals of the note, who would take it up when due, while the makers thereof should be, to all intents and purposes, only co-sureties for Thoman & Co. With that understanding Davis executed the instrument, and Henry Thoman thereupon procured the signatures to the same, of John Dodane, Philip Bauer, William E. Crowe and Peter Bauer. In behalf of J. A. Thoman & Co., Peter Bauer went to Bucyrus, and there borrowed the amount of the note from John G. Birk, the treasurer of Crawford County, delivered the note to Birk, and handed over the money he had received to Henry Thoman for his firm. Neither at the time of negotiating the loan of Birk, nor at any time before or after, was the name of the payees of the note— J. A. Thoman & Co. — endorsed thereon; but Birk, after the delivery of the note to him, altered the same by erasing the name of the original payees by drawing the pen through it, and writing his own name — John G. Birk — as payee therein. This alteration was made without the knowledge or consent of Davis, Crowe, or any of the signers of the instrument except Peter Bauer; and Davis did not know of the alteration until months after it was made, and did not in any way ever sanction or ratify it after it was made. About the 7th of September, 1874, Philip Bauer paid the note and took it up, and he testifies that he did not until after so paying it, learn that John G. Birk’s name was in the note as payee. Philip Bauer paid the note of his own *260 volition, without the knowledge or request of Davis, and without his approval or acquiescence.
W e are satisfied from the evidence, that Davis executed the note solely for the accommodation of J. Thoman & Co.; that he never received any portion of the money loaned on it; and that the proceeds of the note were used entirely by the bankers — Thoman & Co. — in paying their own debts, and in meeting the checks and drafts of their depositors. We think furthermore, that under the solicitation of Henry Thoman, all the makers of the instrument became parties to it, with the understanding, that they were executing it for the accommodation of the payees; that the payees would provide for the payment of the note at maturity, and if not then paid, the contributive share of each maker would be only the one-fifth part of the amount required to be paid.
It is evident that the erasure of the name of the payees by Birk was, as to. the makers of the note, a material alteration. From the moment of the change they became strangers to the instrument. The alteration destroyed the identity of the contract, and imposed upon the makers a contract to which they had never assented. And in that view we might appropriately adopt the reasoning and language of Scott, J., in Boalt v. Brown, 13 Ohio St., 364, in which it is said, “Brown had assented to, signed and authorized the delivery of one note.; and Hurlbut, declining to accept, did accept another, which he knew Brown had never assented to, had never signed, and had never seen. In all this there is evidently no contract; for the parties, Brown and Hurlbut, did not mutually assent to the same terms. Brown’s note was never delivered, and the note Which was delivered was not Brown’s.” After striking out the name of J. Thoman & Co., as payees the makers were, on its face, made directly liable to Birk as payee instead of indorsee. Being only accommodation paper, based upon no consideration, Thoman & Co., without the alteration, upon their endorsing and taking up the note, would have had no recourse to Davis or the other makers. The instru *261 ment would have had no validity in their hands, as payees or otherwise.
The rule is elementary, that a material and intentional alteration of a written instrument will avoid it, when the alteration is made by or with the privity of one claiming a benefit under the instrument, and after the instrument has been delivered and taken effect. Fullerton v. Sturges, 4 Ohio St., 529 and cases cited. Such a material change of •the note by Birk — an interested party — as erasing the name of the payees, and inserting his own instead, avoids the instrument as to Davis and the other makers not assenting to the alteration. In German Bank v. Dunn, 62 Mo., 79, after a note was completed, in the absence and without the authority or knowledge of the maker, the name of the payee was by the holder erased, and his own name substituted. It appeared that the note was in fact made for the holder’s benefit, and there was no evidence that the erasure was made with any sinister or fraudulent motive. It was the opinion of the court that the alteration operated to discharge the maker. In that case it was urged that the alteration was not a material one, as it did not thwart the intention of the maker; but, the court, in accord with its previous decisions, enforced the rigid doctrine that fraud should be prevented even in its incipient stages, by putting an absolute interdict on all unauthorized tamperings, thereby placing the holders of paper under the strong bonds of pecuniary self interest to keep it entirely intact.
In the case of Stoddard v. Penniman, 108 Mass., 366, the action was to charge the defendant as an original promisor upon a promissory note. It appeared that the note was made payable to the maker’s order; that while it was in this condition, and before the maker endorsed it, the defendant put his name on the back of it for the maker’s accommodation; and that in negotiating it to the plaintiff, the maker altered its face so as to make it payable to the plaintiff’s order, without the defendant’s knowledge or consent. It was held that this was a material alteration, *262 and avoided the defendant’s liability. See also Cumberland Bank v. Hall, 1 Halst., 215; Dolbier v. Norton, 17 Me., 307.
It is the general rule that if several persons become co-sureties, by the same instrument, and one surety pay the demand, or more than his own proportion of it in reference to the number of his co-sureties, and thereby relieve the latter from liability, he may recover against each co-surety his aliquot share or proportion of the debt, or of the sum paid by him beyond his own proportion, upon an implied promise to contribute. The note under consideration having been altered without the knowledge or consent of Philip Bauer, he was discharged from its payment. But notwithstanding his discharge, he paid the note sua sponte, and having done so, he could have no claim for contribution upon the other joint and several makers who were his co-sureties. To establish a claim for contribution, the payment must have been made by him under a legal and fixed obligation. Pitt v. Purssord, 8 M. & W., 538; Davies v. Humphreys, 6 id., 153; 2 Parsons’ N. & B., 253. In the emphatic language of the court in Russell v. Failor, 1 Ohio St., 327, “Upon no principle of justice or sound reason, can a surety, by voluntarily paying money on a void note, impose an obligation upon a co-surety for contribution.”
It is said, that Philip Bauer did not know that the note had been altered, until after he had taken it up. He certainly knew when he became a party to it, that it was made payable to the order of J. Thoman & Co. at their banking house in Crestline, and, if at the time of his paying it, he omitted to observe the fatal alteration in the instrument, his oversight, indifference or neglect, cannot create an obligation upon a co-surety who, by operation of law, had been relieved from all liability at the time the note was paid bj^ him. His position should be regarded in like manner with that of one who would seek to make another person his debtor against his will, by voluntarily paying a claim for which that person is not legally bound. Such voluntary payment could of course confer no right of action.
Whether Philip Bauer might have a remedy against John *263 G. Birk for money paid under a mistake of fact on tlie ground that he paid the note in ignorance of the alteration, and without any critical examination to see that there had been no alteration, we do not deem it necessary to inquire.
From these views of the rights of parties, we are of opinion, that the judgments of the district and common pleas courts should be reversed, and the cause remanded to the court of Common Pleas for further proceedings.

Judgment accordingly.