BORT v. E. H. McCUTCHEN & CO. et al.*

(Circuit Court of Appeals, Eighth Circuit.   October 22, 1907.)

No. 2,502.

DEPOSITARIES—BONDS—RIGHT OF ACTION FOR BREACH—BOND TO CORPORATION
AND OFFICER JOINTLY AND SEVERALLY.

Plaintiff was elected head banker of the Modern Woodmen of America, an incorporated fraternal society, and as such became custodian of its funds. As required by the by-laws, he gave a bond for the faithful performance of his duties, among which was the depositing of all money in depositories, selected by him but approved by the directors of the society. He was authorized to transfer funds from one depository to another, but not to withdraw them for any other purpose except upon checks, also signed by other officers. Notwithstanding such deposits, the by-laws provided that he should remain personally liable for the safe-keeping and forthcoming of the funds when required, and that the approval by the directors of a depository, and a bond given by it, should not relieve him from such liability on his own bond. A by-law provided that bonds of depositories should be made payable "to the head banker and to the Modern Woodmen of America, or either of them," and that they should be executed in duplicate, one to be held by the head banker, and one by the board of directors. Such a bond, given by an approved depository, referred to such by-law, and ran to plaintiff by name as head banker, and to the society "jointly and severally," and was conditioned in a penal sum to be paid to plaintiff "as head banker of said Modern Woodmen of America, and to the said Modern Woodmen of America, or either him or it." *Held* that, construing the language of such bond in view of relations between the society and plaintiff, and the latter's continued responsibility for the funds, it was clearly intended, not only as security for the society, but also as personal security for plaintiff—no reference being made therein to his successor in office; that on the death of the principal, and the refusal of his representatives to transfer the funds on deposit on his demand, plaintiff could maintain an action thereon, against the sureties, in his own name, even though his term of office had expired before the action was commenced.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

For opinion below, see 147 Fed. 626.

Craig L. Wright and Asa F. Call, for plaintiff in error.

Will E. Johnston, Elbert H. Hubbard, and Eric A. Burgess, for defendants in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This was an action by A. N. Bort, who was formerly head banker of the Modern Woodmen of America, a fraternal society organized under the laws of Illinois, to recover in his personal right upon a bond given by McCutchen & Co. as principal, and others as sureties, conditioned for the performance, by the principal, of certain obligations as a depository of funds of the society. The society was also made a defendant. Defendants, other than the society, demurred to the petition, and the demurrer was sustained by the trial court upon the ground that Bort was not personally secured by the bond, and therefore had no cause of action for the default of the depository. He stood upon his petition, and judgment went against him; hence this writ of error.

*Rehearing denied February 22, 1908.

The facts disclosed by the petition are as follows: Bort was elected head banker of the society, a position like that of a treasurer, and by virtue of his office became the custodian of its funds. As required by the by-laws, he gave bond to the society in the sum of $500,000 for the faithful performance of the duties of his office. Among the duties imposed on him, and particularly specified in his bond, was that of depositing all funds of the society received by him in one or more depository banks, selected by him, but acceptable to, and approved by, the board of directors of the society. Notwithstanding funds were so deposited he remained personally liable for their safe-keeping and forthcoming when required. In other words, Bort vouched, not only for his own integrity, but also for the integrity and financial responsibility of the depositories. The funds on deposit with the depositories were at the risk of Bort, and his personal bond, just referred to, contained a provision, conforming to a by-law of the society, that the approval by the board of directors of a designated depository, the giving of a bond by such depository, and the fact that it was made payable to the society, should not relieve Bort and his sureties from liability for the default of the depository. Under the by-laws the head banker had authority, acting alone, to transfer funds from one depository to another, but withdrawals for all other purposes were subject to such checks and counter signatures as deprived him of individual control over them, though his liability remained. Upon his election as head banker, Bort designated E. H. McCutchen, who did a banking business as E. H. McCutchen & Co., as one of the depositories, and the latter thereupon gave bond in the sum of $200,000, conditioned, among other things, for the payment of all orders drawn in accordance with the by-laws on the funds deposited. The bond was approved by both Bort and the board of directors of the society. This is the bond in suit. Bort then deposited with McCutchen & Co. $100,000 of the funds of the society. About six months afterwards McCutchen died. Bort, as he was authorized to do, drew orders in favor of another depository, exhausting the funds with McCutchen & Co.; but the orders were dishonored, and a breach of the bond in suit was thereby committed which the personal representatives of McCutchen and the sureties refused to make good. All this occurred while Bort was head banker. In the following year his term of office expired. He accounted to the society for all funds chargeable to him excepting those with McCutchen & Co., and as the society asserted his liability therefor upon his individual bond as head banker, he brought the action in the court below upon the bond of the depository.

A by-law of the society, referred to in the bond in suit, provided that bonds given by depositories should be made payable "to the head banker and to the Modern Woodmen of America, or either of them," and that they should be executed in duplicate, one to be held by the head banker and one by the board of directors of the society. Also, that the approval of such bonds by the board of directors should be with the concurrence of the head banker. The bond given by defendants, McCutchen and sureties, provides that they are firmly held "unto A. N. Bort, as head banker of the Modern Woodmen of America, a corporation duly organized and existing under and by virtue of

the laws of the state of Illinois, and to the said Modern Woodmen of America, jointly and severally, in the penal sum of two hundred thousand dollars ($200,000), lawful money of the United States, to be paid unto the said A. N. Bort, as head banker of said Modern Woodmen of America, and to the said Modern Woodmen of America, or either him or it, for the payment of which sum, well and truly to be made," etc. It is contended by Bort that the bond in suit has two distinct aspects: First, that it is for the protection of the society, and, as such, is in addition to that furnished by his own bond; and, second, that it is for his personal benefit since, under the by-laws and the terms of the bonds, the funds of the society remained at his personal risk after deposit with the depository. The society answered, admitting the averments of the petition and disclaiming further interest. The defendants who demurred contend that the references to Bort in the bond are in respect of his official position and not otherwise, and that, as he had ceased to be head banker, there could be no recovery in his personal right.

In the construction of a writing of doubtful import a knowledge of the atmosphere in which it grew is frequently helpful, and sometimes essential, to a true conception of the intent of the parties. There is no set formula for the expression of ideas; the words and phrases selected by contracting parties differ almost as widely as their personal characteristics. If the significance of the written words is plain to a common intent, that is the end of it; but if not, a view of the positions of the parties and their relations to each other and to the subject-matter of their contract often discloses, with convincing clearness, what they were seeking to attain. The ascertainment of the true intention is the great rule for the construction of contracts, and the favor with which the law regards a surety does not make his undertakings an exception. The case before us is plainly one for the summoning of those well known aids to the construction of an ambiguous text, for there is that in the bond which indicates more than a mere purpose to secure the society alone, in respect of the safe-keeping and forthcoming of the funds.

A consideration of the relations between the society and the head banker, and the latter's continued responsibility for the funds with the depository in connection with the terms of the bond in suit, makes it altogether clear that it was intended that the bond should also stand as personal security for the head banker. The provision of the by-laws that the bond should be payable to both or either of them—a provision that would be unusually tautological under any other construction—is at once explained. But it is said there is no reference in the bond to the by-law imposing a continued responsibility for the funds upon the head banker, and nothing else in it indicating that the makers of the bond intended to bind themselves to him in his personal capacity. But we think that a view of the terms of the bond, and of those things to which attention is directed by its recitals, fairly leads to the conclusion that a dual security was intended—a security for the society and a security for Bort, personally. Any other construction would result in there being but one beneficiary in the bond—the society; for Bort, in his official capacity, was, in legal contemplation, the society itself. Such a

construction would not consist with the studied effort of all of the parties to have a bond with two beneficiaries, whose rights became several and distinct if they chose to make them so. All parties knew that Bort was head banker and the custodian of the funds of the society; that, under the by-laws, he was authorized to appoint a depository subject to the approval of the board of directors; that the initial act in the selection of a depository was his, and that without it no bank or banker could secure such funds, even with the aid of the governing board of the corporation; that when a depository, duly selected and confirmed, came to give its bond, the approval thereof by the board of directors had to meet with Bort's concurrence; that while he was powerless, acting alone, to withdraw funds from a depository for usual corporate purposes, he had unrestricted authority to take them wholly from one depository for deposit with another. The bond in suit runs to Bort as head banker and the society "jointly and severally," and the signers undertook to pay the penal sum to Bort, as head banker, and the society, "or either him or it." The bond was required to be made in duplicate, one copy for Bort and the other for the board of directors. Finally, there is no provision in the bond that it should run to Bort's successor in office. Why all this elaborate machinery if it was not known that the deposit of the funds was at Bort's personal risk, and if it was not intended to secure him against loss? The claim that the mention of Bort's name in the bond should be disregarded, and that his office alone should be considered, logically drives defendants to the further contention that there is but one beneficiary, who, in the last analysis and in legal contemplation, is the society itself. But this does not accord with the manifest purpose to provide for two obligees, and to give to each a several right of reliance upon the security. There is no discernible reason for the double aspect of the relations between the parties, exhibited by the by-laws recited in the bond and by the terms of the bond itself, that is consistent with the construction sought by defendants, while there is a clear harmony with a purpose to provide security for Bort, personally, and the society, jointly and severally, either him or it.

It is contended that the words "jointly and severally" refer to the obligation of the makers of the bond, rather than to the rights of the obligees, but this is contrary to the obvious sense in which the words were used. Were the true construction in this particular at all doubtful, it would be made plain by the subsequent addition of the words "or either him or it" to the conjunction of the names of Bort and the society. It is also contended that the word "as," placed between Bort's name and the title of his office, means that his official character was intended. That is ordinarily the signification, but it is not conclusive. The word "as" is frequently dropped as surplusage, where it appears that its use is inapt or that the title of the office or position following it is intended by way of more definite designation of the person named. It is said that all of Bort's acts in these matters were official. That is true in a sense, yet, when the consequences to him are regarded, they also assume a personal aspect. His was not the usual liability for official misconduct, for, however honestly and faithfully he acted, there was ever present a personal responsibility for the funds of the society;

and everything he did, affecting their custody or deposit, was attended by personal consequences. In this view it would be difficult to draw a line of demarcation between the official and personal qualities of his acts in the premises.

There are some other contentions of defendants, mainly relating to the effect upon the bond and the rights and duties of the parties, of the death of McCutchen, and particularly one that the bond imposed upon McCutchen duties requiring the exercise of personal judgment, skill, and discretion, which his death rendered impossible of performance, thereby resulting in the discharge of the sureties. We have considered but are unable to sustain them.

The judgment is reversed, and the cause remanded with directions to overrule the demurrer, and permit the demurring defendants to answer.