UNITED STATES FIDELITY & GUARANTY CO. v. WOFFORD et al.

(Division B. Nov. 21, 1932.)

[144 So. 550. No. 30180.]

598

Cooper & Thomas, of Indianola, for appellant.

A. M. O'Neil, of Drew, and **Moody & Johnson**, of Indianola, for appellee.

Ethridge, P. J., delivered the opinion of the court.

This suit was brought by the appellant, the United States Fidelity & Guaranty Company, against G. W. Wofford, R. W. Manning, N. J. Burnett, S. C. King, and the heirs of D. Miller, deceased, to enforce an indemnity

contract signed by said above-named parties, which indemnity contract reads as follows:

"Know all men by these presents, that the undersigned (thereafter called the indemnitors) is or are held and firmly bound unto the United States Fidelity & Guaranty Company in the just and full sum of five thousand dollars to be paid to the United States Fidelity & Guaranty Company, its certain attorney, successors or assigns, to the payment whereof, well and truly to be made and done, the said indemnitors bind themselves or himself, and each of their or his heirs, executors and administrators, jointly and severally, firmly by these presents, whereas, the said United States Fidelity and Guaranty Company, at the special instance and request of said indemnitors, became or may in future, become surety on certain bonds, in different penalties and under different dates in which the Commercial Bank & Trust Company of Drew, Mississippi, is, or will be the principal, the condition or conditions of the said bond or bonds being particularly set forth in the said bond or bonds, which are distinctly understood to be made parts hereof as if fully incorporated herein and set out at length, and, Whereas, the United States Fidelity and Guaranty Company has assumed and will assume suretyship on such bonds at the special instance and request of the said indemnitors, who hereby agree that the application by the principal to the United States Fidelity and Guaranty Company to assume suretyship on a bond is to be taken as and constitutes a request from the indemnitors to said United States Fidelity and Guaranty Company to assume such suretyship and brings said bond within the provisions of this instrument, and Whereas, it is expressly understood and agreed that said request remains in full force and effect until revoked in writing by each and every one of the undersigned constituting said indemnitors, and that any and all obligation of suretyship

assumed by the United State Fidelity and Guaranty Company on behalf of said principal above mentioned, both prior and subsequent to the execution of this instrument, including suretyship assumed by continuation or renewal of any original obligation or suretyship, is assumed at the special instance and request of said Indemnitors, who especially warrant the making of such request and that his or their interest in the principal and the giving of said bonds is sufficient to and does constitute a valid consideration for the execution of this bond of indemnity.

"Now, therefore, the condition of the above obligation is such, That if the above bounden indemnitors, or their heirs, executors or administrators, shall at all times hereafter save harmless and keep indemnified the said United States Fidelity and Guaranty Company, its successors and assigns, against all suit, actions, debts, damage, costs, charges and expenses, including court costs and counsel fees at law or in equity, and against all loss and damages that shall or may at any time hereafter happen or result to the said United States Fidelity & Guaranty Company, its successors or assigns, for or by reason of the suretyship of the said United States Fidelity and Guaranty Company, on behalf of the Commercial Bank & Trust Company of Drew, Mississippi, then this obligation to be void and of no effect, otherwise to be and remain in full force and effect. It is expressly understood by the parties hereto and made a condition hereof that the United States Fidelity & Guaranty Company has the right to bring suit under this bond of indemnity immediately after the payment by it of the initial loss and is not compelled to wait until it has exhausted its remedies against the principal or received any or final dividends at the hands of the legal representatives of the principal.

"In witness whereof, the said indemnitors have or has caused these presents to be duly executed the 25th day of February, 1928."

This indemnity was signed by the parties above named, and D. Miller died within a few days after signing and delivering this indemnity bond.

In March, 1929, the United States Fidelity & Guaranty Company executed a bond for the Commercial Bank & Trust Company of Drew, Mississippi, as depository for county funds, in the sum of ten thousand dollars, and this bond was renewed the following year. The bank became insolvent and unable to meet its obligations, and was taken over by the state banking department for liquidation. Demand for the money was made by the county upon the depository, payment was refused, and suit was entered against the United States Fidelity & Guaranty Company, and it paid over the sum of nine thousand dollars on account of its suretyship for said depository. The United States Fidelity & Guaranty Company made demand upon the defendants in this suit for the payment of five thousand dollars, which payment was refused, and suit was brought.

The defendants denied most of the allegations of the bill, denied the execution of the indemnity bond, but did not make affidavit to their bill or denial under oath, as required by section 1587, Code 1930. Consequently, the execution of bond was not in issue.

The proof shows that the depository failed and the amount paid by the surety company on account of its suretyship exceeded the amount of the indemnity bond.

The questions presented for decision, as we understand them from the record, are: (1) Whether the death of D. Miller prior to the execution of the bond for the Commercial Bank & Trust Company at Drew, terminated the liability of D. Miller and his estate upon the indemnity

bond; and (2) whether by virtue of the death of D. Miller before the execution of the depository bond by the appellant, the surety company, all of the signers of the indemnity bond were released from their obligation.

By one of the provisions of the bond above quoted, it is stipulated as follows: "Whereas it is expressly understood and agreed that said request remains in full force and effect until revoked in writing by each and every one of the undersigned constituting said indemnitors, and that any and all obligation of suretyship assumed by said United States Fidelity & Guaranty Company on behalf of said principal above mentioned, both prior and subsequent to the execution of this instrument including suretyship assumed by continuation or renewal of any original obligation or suretyship, is assumed at the special instance and request of said indemnitors, who especially warrant the making of such request, and that his or their interest in the principal and the giving of said bonds is sufficient to and does constitute a valid consideration for the execution of this bond of indemnity."

We think this provision makes each of the signers of the indemnity contract a joint and several maker of said contract, and that the indemnity bond continues until revoked, in writing, by each party for himself. In other words, each signer, individually and severally, remained liable on the indemnity bond to the surety company upon its making a bond in conformity to the provisions of this indemnity contract.

We think, under the authorities, that the death of D. Miller constituted a revocation in his behalf, because the bond for the Commercial Bank & Trust Company of Drew, Mississippi, had not been executed by the surety company at the time of Miller's death. In Aitken, Son & Co. v. Lang, 106 Ky. 652, 51 S. W. 154, 155, 90 Am. St. Rep. 263, it was held that a continuing guaranty, revoc-

able at the will of the guarantor, is revoked by his death, without notice thereof to the guarantee.

In the case before us, there does not appear to have been any notice to the surety company, or anything from which notice could be inferred of actual knowledge of the death of D. Miller at the time it executed the bond.

In the course of the opinion in Aitken, Son & Co. v. Lang, supra, after discussing the principles of liability, the court said: ''Applying these principles to the case at bar, it follows that the defendant is entitled to judgment. The guaranty is carefully drawn, but it is, in its nature, nothing more than a simple guaranty for a proposed sale of goods. The provision that it shall continue until written notice is given by the guarantor that it shall not apply to future purchases affects the mode in which the guarantor might exercise his right to revoke it, but it cannot prevent its revocation by his death. The fact that the instrument is under seal cannot change its nature or construction. No liability existed under it against the guarantor at the time of his death, but the goods for which the plaintiffs seek to recover were all sold afterwards. We are not impressed by the plaintiffs' argument that it is inequitable to throw the loss upon them. It is no hardship to require traders, whose business it is to deal in goods, to exercise diligence so far as to ascertain whether a person upon whose credit they are selling is living.''

The appellees relied upon the authorities contained in the case notes of Chamberlain v. Dunlop, 22 Am. St. Rep. 815, wherein it was held that ''A mere offer or proposal made by a person in his lifetime, but not accepted before his death, will not bind his personal representatives: Grand Lodge, I. O. G. T. v. Farnham, 70 Cal. 158 [11 P. 592]; Pratt v. Trustees of Baptist Society of Elgin, 93 Ill. 475, 34 Am. Rep. 187; Wallace v. Townsend, 43 Ohio St. 537 [3 N. E. 601], 54 Am. Rep. 829;

Phipps v. Jones, 20 Pa. 260, 59 Am. Dec. 708; Helfenstein's Estate, 77 Pa. 328, 18 Am. Rep. 449. An administrator has no right to make an invalid contract of his intestate binding upon his estate: Smith v. Brennan, 62 Mich. 349 [28 N. W. 892], 4 Am. St. Rep. 867.''

In Jordan v. Dobbins, 122 Mass. 168, 23 Am. Rep. 305, it was held that ''A guaranty of the payment by another of goods to be sold, not founded upon any present con sideration passing to the guarantor, and providing that it should continue until written notice should be given of its termination, is revoked by the death of the guarantor.''

The opinion in this case is well reasoned, and strikes us as being sound and controlling so far as D. Miller's death is concerned.

However, Miller's death, in our judgment, did not affect the liability of the other signers of the indemnity contract. Their obligation on the indemnity bond was, by its terms, joint and several. We think the stipulations therein as to consideration were contractual stipulations, and that there was sufficient consideration for the execution of the bond for the Commercial Bank & Trust Company as a depository of county funds to bind the indemnitors.

The argument that the bond was a joint one merely, and that all were bound or none were bound, we think is not sound under the terms of this contract.

The chancellor rendered a judgment in favor of all the defendants. We find his holding is erroneous as to the defendants Wofford, Manning, Burnett, and King. As to these defendants, the chancellor should have rendered a judgment for the amount of the bond against each jointly and severally. The chancellor's judgment in favor of the heirs of D. Miller is correct, and will be affirmed; but his judgment will be reversed as to Wof-

ford, Manning, Burnett, and King, and judgment rendered here upon their obligation.

Affirmed in part, and reversed in part.