## AMERICAN SURETY CO. OF NEW YORK v. EGAN et al.
### No. 6051.

Circuit Court of Appeals, Sixth Circuit.
Dec. 14, 1932.

224

E. S. Reid, Jr., and L. H. Paddock, both of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., on the brief), for appellant.

J. H. Amberg, of Grand Rapids, Mich., and C. N. Sessions, of Muskegon, Mich. (Butterfield, Keeney & Amberg, Morton Keeney, and Harry Shulsky, all of Grand Rapids, Mich., and Cross, Foote & Sessions and Clarence N. Sessions, all of Muskegon, Mich., on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The American Surety Company brought this suit against the Palmer Construction Company and six individual defendants to recover the amounts it was required to pay as surety on a contract which the construction company made with the University of Michigan for the construction of an athletic building. The action was founded on an indemnity agreement executed by the defendants on June 18, 1923. The bond for the contract was executed upon the request of the construction company August 1, 1927. The construction company made no defense to the action, and judgment was taken against it, but the other defendants filed answers asserting, upon grounds alleged, that the indemnity agreement was not a valid and subsisting agreement upon which the surety company did or could rely in executing the bond. The case was submitted to the jury upon the issues tendered in the answers, and a verdict was returned in favor of the contesting defendants. From a judgment rendered thereon, the surety company appeals.

It appears in the proofs that the construction company was organized in 1923 for the purpose of engaging in construction work; that shortly thereafter it sought a contract to construct the Butterworth Hospital in Grand Rapids, and, being required to submit with its bid an offer by a responsible surety to guarantee performance of the contract, it applied to appellant; that appellant agreed to guarantee the contract; and that, pursuant to an arrangement then made, the agreement here in question was executed and delivered. The agreement provides that: "Whereas, the undersigned (hereinafter called the indemnitor) has heretofore required, and may hereafter require suretyship upon certain obligations of suretyship on behalf of the undersigned, or of some other person or corporation, and has applied, and may hereafter apply to the American Surety Company of New York (hereinafter called the Surety) to execute such instruments, as Surety: Therefore, the undersigned does hereby undertake and agree," etc.

■ Counsel agree that the words "undersigned" and "indemnitor," as used in the agreement, include all the parties signing it, the construction company and each of the individual signers. Upon that hypothesis it is argued that appellees were not bound to indemnify the surety company as to any bonds except those which they personally requested, and, as the proofs show that none

of them requested the bond for the athletic building, there should have been a directed verdict in their behalf. We cannot accept this construction. It seems plain to us that it was the purpose of the agreement to deal with the immediate and perhaps prospective needs of the only party whose business was expected to require bonds. It was known at that time that the construction company contemplated engaging in construction work, indeed its application for a guaranty of its bid on the Butterworth Hospital was the immediate cause of the execution of the agreement. No one thought any of the other signers would ever require a bond. Certainly there is nothing in the agreement to indicate that they were not to be bound except upon their separate requests, and, inasmuch as the agreement was executed for the benefit of the construction company, we think it is to be held that the making of an application by that company was sufficient to bind all the signers within the limits contemplated by the undertaking.

The construction company did not obtain the contract for the Butterworth Hospital. The appellees claimed in their pleadings, and introduced evidence to show, that the agreement was executed and delivered with the understanding that it should be effective only as to that contract. They further contended, as stated, that, even if it was not delivered with that understanding, there was no liability for the losses sued for, because only such signers of the agreement as requested the bond were liable for losses sustained by its execution. If this last-mentioned contention is sound, the appellees were entitled to directed verdicts, for there was no evidence showing that any of them requested the execution of the bond. Though overruling motions for directed verdicts made upon that ground, the court nevertheless charged the jury that the request of the construction company was not to be regarded as the equivalent of a request from the appellees. This, in our opinion, was tantamount to saying that it was a necessary condition to liability on the part of the individual indemnitors that they separately request the execution of the bond, and for the reasons hereinbefore stated was error.

Since there must be another trial, we pass upon the other questions argued in order that the case may be disposed of as expeditiously as possible. The first question is whether there was a triable issue as to the understanding that the indemnity agreement should apply only to the hospital contract. The court submitted this question to the jury,

instructing them that, if they found as a fact that the agreement was delivered for use in connection only with the hospital contract, then the appellant was estopped from claiming that it was intended to apply to the contract for the athletic building, and their verdict should be for the defendants. This charge of the court and the admission of the evidence on which it was based are assigned as error.

The appellees did not claim that there was fraud or mutual mistake in the preparation or execution of the agreement. Had they done so, they might have asked for its reformation or cancellation. They claimed that it was delivered upon the condition that it should apply only to the hospital contract. If this defense was open to them, it presented an issue of fact which might have been submitted to the jury for a special verdict. Instead of taking that course, the court submitted the fact issue to the jury and charged them that, if they found that there was such an understanding, then the appellant was estopped from claiming indemnity for the athletic building bond. This charge of the court as a statement of law applicable to the determined fact is not and cannot be objected to. The objection that is here made to it is not that it contains an incorrect statement of the law, but that it was improperly given because no such fact issue was triable, for the reason that the evidence on which the appellees relied to establish the fact was inadmissible. Appellees contend that the evidence was admissible both to show a conditional delivery and explain an ambiguity. Both admit, as they must, that the agreement, though denominated "General Contract of Indemnity," was not a contract at all, but was merely an offer or proposal to make a contract.

It has long been settled that parol evidence is admissible to show that an instrument, unconditional on its face, was delivered conditionally or upon an understanding that it should become effective upon the performance of some act. Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 819, 38 L. Ed. 698; Liebling v. Florida Realty Inv. Corp. (C. C. A.) 24 F.(2d) 688. The rule announced in these cases is applicable as between the parties to sealed instruments. Blewitt v. Boorum, 142 N. Y. 357, 37 N. E. 119, 40 Am. St. Rep. 600. The appellant's position is that a true conditional delivery, as shown by the decided cases, is a delivery of an instrument which is to become effective in its terms upon the performance of a condition, that in such case it is not a question of varying the terms

of the instrument but of showing that it never became operative and no contract was made, and that here the appellees were permitted to show that the instrument was to become effective as to one bond only when by its terms it was applicable to many. Lacking ambiguity in the stipulated terms, there may be reason for this distinction. Burke v. Dulaney, supra, does not note it, but cites with approval decisions holding that the "extent of the operation of the instrument" may be shown by parol evidence to be "limited by the conditions with which delivery is made." We do not find it necessary to pass upon the point, for in our opinion the evidence was admissible to explain an ambiguity appearing on the face of the agreement.

■ For the reasons already referred to, it is obvious that it was contemplated by the parties that the appellant would not be called upon to execute a bond or bonds for any one but the construction company. It was that company alone that submitted to the surety company a statement of its resources. That the agreement refers to bonds other than those relating to construction work evidences nothing more, in our opinion, than the failure of the surety company to adapt a general form to a specific understanding. Due also, no doubt, to the same lack of adaptation, the language used is broad enough to cover all kinds of bonds for all of the signers of the agreement. Notwithstanding this breadth of language, it is apparent that the agreement was not intended to apply to any bond that any signer of the agreement might request and the surety company write. It appearing therefore that there are undefined limitations embodied in the instrument, it was open to appellees, in our opinion, to show the true understanding as to the scope of its operation. Salt Lake City v. Smith (C. C. A.) 104 F. 457, 462; Kauffman v. Raeder (C. C. A.) 108 F. 171, 175, 54 L. R. A. 247; Bort v. E. H. M'Cutchen & Co. (C. C. A.) 157 F. 182, 184; Queensboro Nat. Bank v. Kelly (C. C. A.) 48 F.(2d) 574, 577; Ætna Casualty & Surety Co. v. Nat. Bank (C. C. A.) 59 F.(2d) 493, 495.

■ Appellant complains of the court's ruling in sustaining objections to certain questions relating to its underwriting committee's reliance on the agreement at the time it authorized the execution of the athletic building bond. Many of the questions were so framed as to call for the conclusion of the witness. Had the answers to those properly framed been received, it would have added nothing to the evidence otherwise admitted on that point. It was also proper for the court to charge the jury that, even though the offer was unconditional and was intended to apply to any bond thereafter signed for the construction company, if the appellant failed to act upon such offer within a reasonable time, there was no acceptance of it, and the appellees were not bound. Similarly the court rightly submitted to the jury the issue as to whether there was a withdrawal of the offer before it was accepted.

We find nothing objectionable in that part of the charge relating to appellant's demand for other indemnity in connection with the construction company's application for a bond for the construction of the Graceland Mausoleum. This evidence was admissible as tending to show that appellant did not rely on the agreement at the time it executed the athletic building bond. The comments on the evidence by the court in its charge were entirely proper.

It results from the foregoing that the judgment must be reversed and the cause remanded for a new trial.