Edwin DENTON, Appellant,

v.

FIREMAN'S FUND INDEMNITY COMPANY, Appellee.

No. 7939.

United States Court of Appeals
Tenth Circuit.

Oct. 28, 1965.

Richard L. Banta, Jr., Denver, Colo. (Robert W. Botts and Harry O. Morris, Albuquerque, N. M., on brief), for appellant.

William C. Briggs, of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

MURRAH, Chief Judge.

The appellant, Edwin Denton, and his deceased business partner brother signed a "General Contract of Indemnity" with appellee, Fireman's Fund Indemnity Company, whereunder " * * * each of them for themselves * * * jointly and severally * * * " agreed to indemnify the company for any losses which it " * * * may at any time sustain or incur by reason * * * " of having executed any bond on behalf of Denton and Griggs, another brother's partnership construction company. After the death of appellant's business partner brother, the Denton and Griggs partnership defaulted on a number of construction projects, for the performance of which Fireman's Fund had issued surety bonds. As a result of the default, the surety company was required to pay an agreed amount. In this suit to recover the amount so paid plus interest, costs and attorneys' fees, the trial court gave judgment for the indemnity company.

On appeal Edwin Denton has raised a myriad of points, but we think the trial court properly grouped them under three principal headings: (1) The bond was executed by the indemnitors on the condition that it would also be executed by the principals, Denton and Griggs, who were named in the face of the instrument, and since the principals never executed it, the indemnitors were never bound; that in any event the agreement was executed and delivered with the intention and understanding that it covered a bond or bonds for one specific project on which no losses were alleged or proved. (2) The agreement sued on, if originally valid, was terminated (a) by the death of the co-indemnitor; or (b) by the subsequent words and deeds of the parties. (3) The indemnity company is by its conduct estopped to assert liability on the indemnity agreement.

On the point of conditional delivery, the appellant offered testimony to the effect that his brother, J. Earl Denton, brought the prepared indemnity agreement to his place of business and prevailed upon him and his other brother to sign it on the condition that Earl and his business partner Griggs would also execute it and on the further understanding that the agreement was to cover only one specifically named project, to-wit: the Eunice School.

If, of course, the appellant executed the agreement on the conditions as stated and the indemnity company was aware of such conditions, liability under the agreement never attached. See Halliburton Company v. McPheron, 70 N.M. 403, 374 P.2d 286. The fact that Earl Denton and Raymond Griggs were named in the body of the agreement but

never signed it was sufficient under New Mexico law to put the company on constructive notice that the indemnitors may have signed on condition that the other brother and his business partner would also sign and complete the instrument. See Hendry v. Cartwright, 14 N.M. 72, 89 P. 309, 8 L.R.A.,N.S., 1056; M. J. O'Fallon Supply Co. v. Tagliaferro, 29 N.M. 562, 224 P. 394; American Surety Company of New York v. Egan, 6 Cir., 62 F.2d 223; 50 Am.Jur., Suretyship, § 161, p. 1008. The asserted conditional execution was to be sure a question of fact which appellant was under the burden of proving.

On this factual issue the trial court credited the company's witnesses to the effect that the typewritten portion of the contract containing the names of Earl Denton and Raymond Griggs was prepared by the company and submitted to appellant and his deceased brother in the office of the president of a bank in Clovis, New Mexico; that appellant and his brother signed the contract as individuals on the date it bears in the presence of two insurance agents; that it was notarized by one of the agents who personally witnessed the signatures of the appellant and his brother.

■■ The court further specifically found that prior to the execution and delivery of this indemnity agreement, Earl Denton and Raymond Griggs, joined by their respective wives, had executed and delivered a general contract of indemnity pursuant to which the company had issued bid and performance bonds for the partnership until they advised Denton and Griggs it would be necessary to secure additional indemnitors; that as a result of the request for additional indemnitors the appellant and his brother executed this indemnity agreement; that it was delivered to the company's agents by the appellant Edwin Denton with knowledge that the principals Earl Denton and Raymond Griggs had not executed it and that there was no intention expressed at that time or any time material here that Denton and Griggs should execute the agreement; that it

was delivered to the company's agent with the intention that it would be immediately effective without further signatures being necessary. It is sufficient to say that these findings are supported by the evidence, are binding here and are dispositive of the question of conditional delivery.

On the question of the scope or coverage, the agreement expressly recites that certain " * * * bonds have heretofore or may hereafter be required by, for and on behalf * * *" of Denton and Griggs, and the " * * * indemnitors, and each of them, for themselves, jointly and severally do hereby covenant and agree * * *" to become liable for any losses which the " * * * company shall or may at any time sustain or incur by reason or in consequence of having executed or having procured the execution of any such Bond * * *". The appellant does not seem to deny the continuing coverage under the terms of the agreement. He says he did not read it and was not given a copy. But, on the theory of conditional delivery he was permitted to testify at variance with the terms of the agreement to the effect that when his brother asked him to sign the agreement, he told him it was intended to cover one construction contract, to-wit: the "Eunice School"; that after his brother's death and before the issuance of any bonds under the agreement, he learned for the first time of its continuing effect. Appellant and his brother had previously executed an indemnity agreement for their other brother Earl covering one specific project. Earl was also permitted to testify that he represented to his brother that the agreement in issue was intended to cover his bid on the Eunice School, but that he did not so advise Fireman's Fund.

There was direct and contradictory testimony that at a conference with the insurance agents after the brother's death in connection with an administrator's bond appellant was informed that the indemnity agreement was in effect and that it was a "continuing obliga-

**98**

tion", and he was a "little amazed at the bond—that the indemnity agreement was a continuing thing and that he was under the impression that it was just for one job that his brother was doing."

From the conflicting testimony the court specifically found that it was never the intention of the company, the appellant or the principals that the agreement " * * * would be limited to any specific bonds or bonds for any specific projects * * * ", but that it was intended to " * * * cover whatever bonds were requested by the principals and executed by the [company] in reliance upon the general contract of indemnity." This positive and unequivocal finding, as supported by the evidence, is not clearly erroneous, and it means that the agreement was unconditionally delivered and that it became a binding contract, enforceable according to its terms and conditions.

This brings us to the question of whether, as contended, the contract was terminated by the death of the brother or the conduct of the parties. It is important to keep in mind that no attempt is made to impose liability on the deceased brother's estate, and we, therefore, have no occasion to consider the situation involved in American Chain Company v. Arrow Grip Manufacturing Company, 134 Misc. 321, 235 N.Y.S. 228, wherein the indemnity agreement expressly provided that the death of the guarantors should not terminate the liability of the guarantors under the agreement except by giving of notice of the termination as provided in the agreement. In that case all of the guarantors died and the suit sought to impose liability on the estates for transactions occurring after their death. The court characterized the continuing obligation of the administrators and assigns as a series of independent offers severable by each subsequent transaction, and held that since a dead guarantor could make no offer or promise, no liability was imposable on any transaction after death. See A.L.I. Restatement of the Law of Security, § 87; A.L.I. Restatement of the Law of Contracts, § 48. We have no

quarrel with this philosophical reasoning, but it has no application here.

Although the contract here does not specifically provide that the liability of one co-indemnitor shall continue after the death and termination of the liability of the other, it does, as we have seen, specifically bind " * * * each of them for themselves * * * jointly and severally * * * ", and also provides that " * * * the obligation hereunder shall be continuous; provided, however, that any one of us may give the Company not less than thirty days written notice by registered mail of his desire to terminate this agreement * * * ". Under these provisions, it seems too plain for doubt that " * * each signer, individually and severally, remained liable on the indemnity bond to the surety company upon its making a bond in conformity to the provisions of this indemnity contract." See United States Fidelity & Guaranty Co. v. Wofford, 164 Miss. 597, 144 So. 550, 551. The relationship of the indemnitors to each other is the same as it would have been if each had signed a separate instrument. See German-American State Bank v. Bear, 111 Kan. 193, 206 P. 902; and see generally Corbin on Contracts, Vol. 4, § 937; Williston on Contracts, 3rd Ed., § 316; Am.Jur.2d, Contracts, § 299.

On the question of whether the contract was terminated by the conduct of the parties, it seems to be admitted that appellant never gave written notice of his desire to terminate the agreement. His proof on the point is to the effect that after his brother's death, he met with the local insurance agent for the company to arrange an "administrator's bond"; that the state agent for the company who was making an investigation preparatory to writing the bond expressed some doubt whether the company would write the administrator's bond for appellant in view of his continuing obligation under the indemnity agreement; and that after telephone conferences with company offices in Denver and San Francisco it was agreed in substance that the company would write the administra-

tor's bond and that Denton and Griggs would have to secure other indemnitors; that after discussion with the agent in the presence of appellant's attorney, he was advised in effect that the surety bond was terminated with the execution of the administrator's bond.

The trial court credited the company's version of what was said and done at these conferences and specifically found that the negotiations for the administrator's bond were conducted at the plaintiff's local office in Portales, New Mexico, at which the company's state agent was present and participated; that during the course of discussions in connection with the administrator's bond the appellant was informed by the company's agent that the death of his brother John did not result in the termination of his liability; that it was a continuing obligation; that none of the company's agents ever advised the appellant that the agreement was "cancelled or revoked" or that his liability thereunder terminated. We agree with the trial court.

Appellant denies that the company ever relied on the indemnity agreement in its dealings with Denton and Griggs as indicated by the refusal to execute a bond for them about a year later and that it ever notified appellant of the issuance of the bonds or sought any authorization from appellant concerning any such bonds. Attention is also called to the fact that the company failed to notify appellant of the issuance of the bonds or the losses thereunder until 2½ years after the execution of the agreement, and that taking the agreement as a continuing offer which lapsed for nonacceptance after a reasonable time, i. e. see American Surety Co. of New York v. Egan, supra; Restatement of Contracts, § 40; Corbin on Contracts, Vol. 1, p. 147, § 36, the indemnity contract is unenforceable with respect to the asserted obligations thereunder.

██ It is the general rule freely accepted and applied in New Mexico to the effect that an uncompensated guarantor has a right to stand on the strict terms of his agreement and that any act or conduct of the principal which increases the risk or prejudices the rights of the guarantor will operate to release his obligations at least to the extent of the prejudice. See Sproul Construction Company et al. v. St. Paul Fire and Marine Insurance Company, 74 N.M. 189, 392 P.2d 339. While New Mexico has not specifically applied this rule to indemnity contracts, it is generally applicable, and in circumstances like these we think the same rule would apply. See American Casualty Company of Reading, Pennsylvania v. Idaho First National Bank, 9 Cir., 328 F.2d 138.

The court found from the evidence that while the company never gave notice to appellant of the execution of the various bonds issued to Denton and Griggs, including those forming the basis of this suit, all of the bonds described in the complaint were written at the specific request of the principals, and each bond was signed by the principal partners who became fully obligated thereon; that the appellant did not lack "means of knowledge" as to the continuation of his liability under the agreement and of the bonds being issued by the company in reliance thereon; that he made no effort to ascertain the true status of his liability and did not in fact ever intend to revoke the indemnity agreement either at the time of the negotiations and issuance of the administrator's bond or thereafter. Strictly construing the indemnity contract in the fullness of the favoritism of the law accorded the appellant indemnitor in this case, we agree with the conclusion of the trial court that the appellant become fully bound to indemnify the company for the agreed amount of losses suffered as a result of the bonds for which liability is sought to be imposed in this suit.

██ The conclusive findings of the trial court are completely dispositive of the estoppel issue. We agree with the trial court that the company was not by its conduct estopped from asserting its claim.

Judgment is affirmed.