_____

No. 94-3867
No. 94-3919
_____

United States of America,          *
                                   *
     Plaintiff,                    *
                                   *
Ray G. Mair, also known as Ray     *
Mair, as personal representative*
for the estate of Juniet N.        *
Mair,                              *
                                   *
     Appellant/Cross Appellee,     *
                                   *
     v.                            *   Appeals from the United States
                                   *   District Court for the District
Earl Schwartz; Gladys Schwartz;    *   of Minnesota.
Earl Schwartz Co.; Kay Schwartz    *
York; Kathy Schwartz Mau; Ray      *
York; Jarvis York; Jardy York;     *
Joanna Kay York; Robert Mau;       *
Cassandra Mau; Brekka Mau;         *
Kara Lea Schwartz Johnson;         *
Crookston Cattle Co.,              *
                                   *
     Appellees/Cross Appellants.*

_____

Submitted:  October 19, 1995

Filed:  July 30, 1996
_____

Before MORRIS SHEPPARD ARNOLD, FLOYD R. GIBSON and ROSS, Circuit Judges.

_____

ROSS, Circuit Judge.


     Appellant Ray Mair appeals from the district court's ruling that his
bad faith misconduct relieved Earl and Gladys Schwartz and the Schwartz
family partnership (the Schwartzes) of their duty to

indemnify Mair on certain notes held by the FmHA. Mair also appeals from the court's grant of summary judgment in favor of the Schwartzes on Mair's claim seeking damages for breach of contract. The Schwartzes, in turn, cross-appeal on certain issues relating to damages. We affirm in part and reverse in part.

## I.

In 1981, appellant Raymond Mair, a cattle rancher, along with his wife, borrowed a total of $1,148,275.84 from the FmHA for use in their business, the Crookston Cattle Company (CCC). The Mairs signed two promissory notes, both individually and on behalf of the corporation (the notes). In 1984, the Mairs sold all of the stock in CCC for $5,747,500 to the Schwartzes, payable in a combination of cash payments over time and the assumption of two mortgages on the land and various CCC debts, including the two FmHA promissory notes. The Schwartzes claim that because Mair misrepresented the amount of tillable acreage owned by CCC, and because of the general failure of the farm economy in the mid-1980's, they were unable to pay the Mairs the amounts called for under the purchase agreement. Ultimately, the primary and secondary lenders foreclosed on the farm. The FmHA, which held a third secured position, did not collect on its notes.

In 1986, the Mairs filed suit in Minnesota state court for breach of the purchase agreement, alleging that the Schwartzes had failed to make the payments to both the Mairs and the FmHA. The Schwartzes counterclaimed for fraud in the inducement, asserting the Mairs had misrepresented the number of tillable acres. Through discovery, the Mairs learned that the Schwartzes were converting FmHA's collateral that secured payment of the notes by commingling the collateral pledged to the FmHA with other collateral owned by another Schwartz entity known as Schwartz Farms.

In 1989, the parties adopted a settlement agreement, whereby

the Schwartzes agreed to pay the Mairs $1.95 million in cash over time and to indemnify the Mairs from claims that could be asserted by certain third parties, including the FmHA.  As part of the agreement, the Schwartzes agreed to resolve or cure any claim within ten days following receipt of a notice of claim as defined in paragraph 4 of the settlement agreement:

> Schwartzes will indemnify Mairs from any and all charges, claims and liabilities that may arise out of Mairs' personal obligations under the mortgages and security agreements and notes which they secure against [CCC] land and assets held by . . . the FmHA.  Mairs agree to notify Schwartzes by certified mail of any charges, claims or liabilities arising out of the above-referenced mortgages, security agreements and notes or Mairs' personal guarantees thereof. Any such notice shall include information pertaining to the nature and extent of the claim.  A description thereof, including the amount and particulars of any such charge, claim or liability shall be included in any such notice.  Schwartzes shall have ten days following receipt of any such notice in which to resolve or cure the charge, claim or liability to which reference is made.

Paragraph 4 also provided that, if the Schwartzes chose to contest the claim, their obligation to resolve or cure the claim would be satisfied if they posted "an amount in cash which would be sufficient to pay such claim, charge or liability."

Under paragraph 5 of the settlement agreement, the Mairs  agreed to consent to any satisfaction of the FmHA indebtedness, "including an agreement to sign an FmHA form document in which the Mairs and the Schwartzes agree that the net recovery value to the FmHA under its mortgage from [CCC] is zero."

The Schwartzes' obligations under the settlement agreement were secured by two provisions in the contract, one providing for the posting of "adequate security" as determined through an arbitration process, and the other providing for the entry of a $3.5 million confession of judgment in the event the Schwartzes

defaulted on their obligations.  Payments by the Schwartzes or any write-downs of third-party obligations would reduce the confession of judgment.

Following execution of the settlement agreement, the Schwartzes made regular payments to the Mairs.  Substantially all of the $1.95 million plus interest was paid off by December 1994.  The Schwartzes, however, as before, failed to make any payments to the FmHA.

Mrs. Mair died on October 27, 1991, and on December 31, 1991, the FmHA filed a claim against her estate in the amount of $1,538,020, plus additional per diem interest, for payment of the FmHA promissory notes for which the Mairs remained primarily liable.  On January 19, 1992, Mair sent a copy of the claim to the Schwartzes in accordance with the notice provision of paragraph 4 of the settlement agreement.  The FmHA probate claim was not allowed by Ray Mair, personal representative of the estate, and the claim was later disallowed.  The government subsequently filed a petition for allowance, thereby reviving the claim.

On April 28, 1992, the United States filed this action in  federal court against Ray Mair personally.  Mair did not inform the Schwartzes of this lawsuit.  Instead, on May 8, 1992, Mair filed the plea of confession of judgment without notice in federal court and obtained an ex parte $2.8 million judgment against the Schwartzes.[1]  Mair then brought third-party claims against the Schwartzes, seeking damages for breach of their agreement to indemnify.  During the course of the proceedings, the United States amended its complaint to seek damages against the Schwartzes, claiming that it was a third-party beneficiary of the settlement

_____

[1]The $2.8 million judgment resulted from the $3.5 million agreed-upon confessed judgment, reduced by the payments the Schwartzes had made to date.

-4-

agreement.

On June 3, 1992, the Schwartzes contacted the FmHA and offered $400,000 to settle the $1.5 million obligation to the FmHA. The FmHA rejected the offer on August 14, 1992, explaining that it was "not viewed as reasonable" but that further discussion would be welcomed if the Schwartzes offered "a more substantial portion of the total due."

The Schwartzes moved to vacate the judgment of confession on August 3, 1992, claiming they were not given proper notice prior to its filing. Mair opposed the motion, arguing that the Schwartzes had waived the right to notice in the settlement agreement. The district court granted the motion to vacate the judgment on October 5, 1992, finding that the Schwartzes "may not have been notified of the default proceedings nor served with the third party complaint prior to the entry of default judgment."

In December 1992, the Schwartzes and the United States negotiated a $900,000 settlement of the FmHA indebtedness which was conditioned upon the release of all outstanding claims, including, according to Mair, his cross-claim against the Schwartzes for damages resulting from their alleged failure to indemnify. Consequently, Mair refused to join in the settlement as written. Notwithstanding Mair's alleged failure to cooperate, the Schwartzes successfully settled with the United States on August 23, 1993 for $900,000. In the same instrument, the government assigned the negotiable FmHA promissory notes to the Schwartzes, including any claims the government may have had against Mair relative to those notes.

On August 27, 1993, four days after they were substituted as plaintiffs for the United States, the Schwartzes filed two motions for summary judgment. First, as third-party defendants, the Schwartzes sought summary judgment on Mair's cross-claim for breach

of contract, asserting that their duty as indemnitors had been discharged because of Mair's bad faith.

Second, the Schwartzes filed a motion for summary judgment as assignees of the United States, seeking damages of $1,722,754.10 against Mair on the notes. Only $840,183.69 owed on the notes represented principal, while the remaining $882,570.41 represented interest and advances that had accrued during the nine years in which the Schwartzes failed to make payment on the FmHA loans.

In January 1994, the district court denied the Schwartzes' motion for summary judgment on the notes, but granted the Schwartzes' motion for summary judgment on Mair's cross-claim. The district court concluded that the Schwartzes' duty to indemnify had not been triggered because Mair failed to properly notify the Schwartzes of the FmHA claim. Further, the court held that by obtaining a confession of judgment against the Schwartzes without first notifying them of the FmHA suit against Mair personally or without notifying them of his intention to obtain a default judgment, Mair breached his duty to provide notice under paragraph 4 of the settlement agreement.

In addition, the district court held that Mair breached his duty under paragraph 5 of the settlement agreement, which required him to "consent to any satisfaction" of the FmHA indebtedness, when he refused to consent to the proposed $900,000 satisfaction agreement between the Schwartzes and the United States on the FmHA notes. The court concluded that "any obligations the Schwartzes had under the Settlement Agreement were eliminated by the Mairs' bad faith conduct in this matter," including their duty to indemnify Mair. Accordingly, the court allowed the Schwartzes to take assignment of the FmHA notes and claims and to sue Mair on the same notes against which the Schwartzes had agreed to indemnify him.

In May 1994, the case went forward to trial on the Schwartzes' claims on the notes. The only issues remaining at trial were whether the Schwartzes had impaired the collateral securing the notes and, if so, in what amount. On May 27, 1994, the jury returned a special verdict stating that Mair had proven an impairment of $1,200,000. The amount of impairment was subtracted from the stipulated amount still owing on the notes, and judgment was entered against Mair in favor of the Schwartzes in the amount of $629,608.16.

## II.

Several critical issues are raised in this appeal. We first turn to the question of notice under the settlement agreement. The district court concluded that the Schwartzes' indemnification obligations were never triggered because Mair failed to properly "notify" the Schwartzes of the FmHA claim against Mrs. Mair's estate. Specifically, the court stated that the Mairs failed to provide the Schwartzes with information detailing a specific loss resulting from the FmHA claim. The court held, "[w]ithout this information, the Schwartzes had no duty to indemnify under the Settlement Agreement."

We disagree with the district court's interpretation of the notice requirement. Under the unambiguous terms of the agreement, the Mairs agreed to notify the Schwartzes of, among other things, any "claims" arising out of the mortgages, and that such notice would include "information pertaining to the nature and extent of the claim[,] [a] description thereof, including the amount and particulars of any such . . . claim."

On January 19, 1992, Mair sent a certified letter to the Schwartzes, including a copy of the claim filed by the United States, on behalf of the FmHA, against Mrs. Mair's estate, stating that "[t]his notice is served . . . pursuant to paragraph 4 of the

Release and Settlement Agreement." The letter further provided that, pursuant to paragraph 4 of the settlement agreement, the Schwartzes had ten days following receipt of this notice to resolve or cure the claim, or to deposit sufficient funds in escrow to cover the claim if they chose to contest the liability.

This "notice" clearly included "information pertaining to the nature and extent of the claim, . . . including the amount and particulars of" the claim and therefore satisfied the terms of the settlement agreement. Contrary to the Schwartzes' argument, Mair was not required to give notice of a lawsuit or the commencement of another enforcement proceeding, or notice of a specific loss resulting from the claim. On the contrary, Mair was only required to give notice of a "claim." Mair satisfied this obligation. This conclusion, however, does not end our inquiry.

Immediately following notification of the probate claim, Terri Groen, the Schwartzes' attorney, requested an accounting of the value of Mrs. Mair's estate on several occasions. Ms. Groen explained that any escrow amount required under paragraph 4 of the settlement agreement would be limited to the amount of the potential loss to be suffered if the FmHA was successful in pursuing its claim against the estate. In other words, if the value of the estate was less than the outstanding balance of the FmHA loans, the maximum potential loss would be an amount equal to the value of the estate. The Schwartzes asserted that they were not required under the terms of the settlement agreement to deposit the full amount of the FmHA indebtedness, but only to "escrow an amount . . . sufficient to pay such claim, charge or liability." Settlement Agreement, ¶ 4 (emphasis added). Nevertheless, Mair refused to provide what he considered to be confidential financial information to the Schwartzes.

We disagree with the district court's conclusion that Mair's failure to provide such information rendered the notification of

the claim deficient.  Instead, we conclude that Mair's unwillingness to cooperate prevented the Schwartzes from complying with their duty to resolve or cure the claim within ten days as required by the agreement. As such, while the Schwartzes' duty to indemnify was adequately triggered, the undisputed facts show that they were prevented from doing so by Mair's own failure to cooperate.  Thus, the Schwartzes' duty to resolve or cure the claim within ten days was excused under these circumstances.  See Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984) ("[E]very contract contains an implied condition that each party will not unjustifiably hinder the other from performing."); Craigmile v. Sorenson, 80 N.W.2d 45, 49 (Minn. 1956) (where promisor is the cause of the failure of performance, "he cannot take advantage of the failure") (citing 3 Williston, Contracts (Rev. ed.) § 677).

III.

We next address the district court's determination that the Schwartzes' entire obligation under the settlement agreement was extinguished due to Mair's bad faith.  The court's conclusion was based on its findings that Mair breached the settlement agreement by filing the plea of confession without prior notice and that Mair acted in bad faith by failing to consent to the Schwartzes' $900,000 settlement agreement with the FmHA.  Upon review, we hold the district court erred in reaching these conclusions.

First, the district court misapplied the clear terms of the settlement agreement by concluding that Mair breached the notice requirements of paragraph 4 when he filed the confession of judgment without first informing the Schwartzes of his intention to do so.  Under paragraph 4, the Mairs agreed to "notify Schwartzes . . . of any claims." As we have previously held, Mair satisfied this obligation.  The district court, however, apparently interpreted the contract to require Mair to send an additional "notice of default" prior to filing the confession of judgment.

Paragraph 3(c) provides:

> If Schwartzes fail to make any payment when due hereunder, and fail to cure said default within ten days after Mairs give notice of default by certified mail . . ., Mairs or their attorney in fact may file said judgment against the Schwartzes in any court in the State of Minnesota and proceed to exercise all remedies to collect said judgment. . . .

The "notice of default" reference in paragraph 3(c) does not impose an additional notice requirement on Mair, but instead refers to the Schwartzes' "fail[ure] to make any payment when due" under the settlement agreement. It is the Schwartzes' failure to make payment that results in the referenced "default," and not their failure to cure a claim within ten days. Therefore, under the unambiguous terms of the agreement, "notice of claim" is synonymous with "notice of default" and Mair satisfied this obligation via the January 19, 1992 letter to the Schwartzes. The district court erred in holding that Mair breached the settlement agreement by failing to inform the Schwartzes of his intention to file the confession of judgment. Consequently, the court erred in negating the Schwartzes' duty to indemnify based on this erroneous conclusion.

The district court also erred in concluding that any alleged bad faith on the part of Mair excused the Schwartzes' entire obligation to indemnify. While some courts have established the blanket proposition that bad faith on the part of the indemnitee releases the indemnitor from his obligations under the contract, other courts, particularly the Minnesota Supreme Court, hold that an indemnitee's bad faith will discharge the indemnitor to the extent that he has been damaged as a result of that act. In New Amsterdam Cas. Co. v. Lundquist, 198 N.W.2d 543, 549 (Minn. 1972) the Minnesota Supreme Court held:

> [A]n indemnitee owes a duty of good faith to its

-10-

> indemnitor and . . . any act of the indemnitee which prejudices the rights of the indemnitor <u>will release his obligation to the extent of the prejudice</u>.

(Emphasis added).  <u>See</u> <u>also</u> <u>Denton v. Fireman's Fund Ind. Co.</u>, 352 F.2d 95, 99 (10th Cir. 1965).

Contrary to the clear law of Minnesota, the district court in the present case discharged the Schwartzes' entire obligation under the settlement agreement, without giving any consideration whatever to the extent, if any, of the prejudice suffered by the Schwartzes as a result of Mair's alleged bad faith.  Even assuming that Mair acted in bad faith in failing to consent to the proposed $900,000 settlement[2], the Schwartzes were ultimately able to settle with the government for that exact amount, and thus suffered no prejudice.

Because they suffered no prejudice as a result of Mair's alleged bad faith, the Schwartzes' obligation to indemnify under the settlement agreement remained intact.  The district court erred in concluding that the Schwartzes no longer had a duty to indemnify Mair for claims arising from the notes, and further erred in its concomitant holding that the Schwartzes were entitled to sue Mair on the remaining balance of the notes, the same notes for which the Schwartzes agreed to hold Mair harmless.  To hold otherwise would produce the untenable result of allowing the Schwartzes to profit from their failure to satisfy their own indebtedness to the FmHA.

---

[2]Mair, of course, claims there was no bad faith in his refusal to sign the agreement as written because it required him to release his claims against the Schwartzes for breaching the original settlement agreement.  He asserts that notwithstanding his promise to consent to a satisfaction agreement with the FmHA, he was not legally required to release all of his claims against the Schwartzes.

IV.

In summary, we hold that Mair adequately notified the Schwartzes of the FmHA's claim against Mrs. Mair's estate.  In this respect, we conclude that the indemnification agreement was triggered and the Schwartzes had a duty to indemnify Mair from this claim.  However, the Schwartzes' attempts to cure the claim were thwarted by Mair's failure to cooperate.  Therefore, the Schwartzes did not breach their duty to indemnify under the settlement agreement and Mair was not entitled to the default judgment outlined in the confession of judgment.

Finally, we conclude the Schwartzes were not prejudiced by any alleged bad faith on the part of Mair as indemnitee, as the Schwartzes were ultimately able to settle with the United States in an amount identical to that proposed to and rejected by Mair.  As such, the Schwartzes' duty to indemnify remained intact and the district court erred in allowing the Schwartzes to sue Mair on the same obligations under which they had agreed to indemnify him.

This conflict has lasted for ten years now, each party contributing to a bitter and protracted legal battle.  Neither party comes to this court with entirely clean hands and neither party is entitled to the respective windfalls that they seek.  Both parties have received substantially what they bargained for.

Our conclusions herein obviate the need to discuss any further issues presented in either the appeal or cross-appeal.  The denial of Mair's motion for damages incident to the confession of judgment is affirmed.  The order granting the Schwartzes' motion to be substituted as plaintiffs and the judgment in favor of the Schwartzes as assignees of the notes are reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.