DANA CORPORATION, Plaintiff

v.

FIREMAN'S FUND INS. CO., et al., Defendants.

The Celotex Corporation, Plaintiff

v.

Dana Corporation, Defendant.

Nos. 83CV1153, 85CV7491.

United States District Court, N.D. Ohio, Western Division.

Aug. 20, 1999.

Richard S. Walinski, Cooper & Walinski, Toledo, OH, John DeQ. Briggs, Howrey & Simon, Washington, DC, James F. Nooney, Eastman & Smith, Toledo, OH, for Dana Corporation, plaintiff.

Joan C. Szuberla, Theodore M. Rowen, Spengler & Nathanson, Toledo, OH, Matthew Gluck, Barry G. Sher, Guy Yonay, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Celotex Asbestos Settlement Trust, intervenor.

Steven Timonere, Doyle, Lewis & Warner, James F. Nooney, Eastman & Smith, Toledo, OH, for Fireman's Fund Insurance Company, American Insurance Company, and Association Indemnity Corp., cross-claimants.

James R. Knepp, II, Robison, Curphey & O'Connell, Toledo, OH, William J. Bowman, James P. Ruggeri, Hogan & Hartson, Washington, DC, Jack Zouhary, S.E. Johnson Companies, Maumee, OH, for Hartford Accident and Indemnity Co., defendant.

James F. Nooney, Eastman & Smith, Toledo, OH, for Celotex Corporation, defendant.

Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Anderson Memorial Hospital, movant.

Steven Timonere, Doyle, Lewis & Warner, Toledo, OH, for American Insurance Company and Association Indemnity Corp, counter-claimants.

James F. Nooney, Eastman & Smith, Toledo, OH, for Hartford Accident and Indemnity Co., and Celotex Corporation, cross-defendants.

### Order

CARR, District Judge.

These are lawsuits relating to a provision in a stock purchase agreement dated February 18, 1969, whereby the Dana Cor-

poration sold its stock in a wholly owned subsidiary, Smith & Kanzler Company, to the Philip Carey Corporation. Both Smith & Kanzler Company and Philip Carey manufactured asbestos containing products. In the provision of the stock purchase agreement at issue, Dana agreed

to reimburse and indemnify [Philip Carey] against and in respect of: ...all obligations and liabilities of [Smith & Kanzler Company] whether accrued, fixed, contingent or otherwise, aggregating in excess of $10,000, arising on or before November 30, 1968 to the extent not reflected or reserved against in the Balance Sheet.

After Philip Carey purchased the Smith & Kanzler stock from Dana, Philip Carey, which was an Ohio corporation, renamed Smith & Kanzler as Philip Carey of New Jersey. Philip Carey of Ohio, while still owning all the stock of Philip Carey of New Jersey, merged into the Briggs Manufacturing Company. Briggs Manufacturing, in turn and while still owning all the stock of Philip Carey of New Jersey, changed its name to Panacon Corporation. On May 30, 1972, Panacon merged Philip Carey of New Jersey into itself. This was, in other words, a merger between the successor (Panacon) to the company (Philip Carey of Ohio) which originally purchased the Smith & Kanzler stock from Dana and the successor to Smith & Kanzler.

On June 30, 1972, Celotex Corporation, also a manufacturer of asbestos containing products, merged with Panacon. As a result of this transaction, Celotex Corporation became a successor to the Smith & Kanzler Company, and owner of its assets and obligated for its liabilities. Beginning in 1982, as Celotex began to be sued in cases based on injuries and damages allegedly caused by asbestos, Celotex claimed that Dana was obligated under the indemnification provision of the stock purchase agreement to indemnify Celotex for losses arising out of exposure to or installation of Smith & Kanzler Company asbestos containing products.

On receipt of a demand to defend from Celotex, Dana sued its insurers in 1983 in this court. On motion of an insurer, Celotex was joined as a party. In 1985, Celotex sued Dana for indemnification under the stock purchase agreement in the United States District Court for the Middle District of Florida. That court transferred the suit to this court, and both suits were consolidated. Thereafter, this court issued an injunction whereby claims arising under the indemnification provision of the 1969 stock purchase agreement between Dana and Smith & Kanzler Company could be brought only in this court.

On October 12, 1989, Celotex, as a result of asbestos-based litigation against it, filed a Chapter 11 petition for reorganization in the United States Bankruptcy Court for the Middle District of Florida. The bankruptcy court issued a stay order relating to litigation involving Celotex. On March 4, 1997, the bankruptcy court approved a Plan of Reorganization, whereby the assets of Celotex, including whatever rights and claims Celotex may have under the 1969 stock purchase agreement and its indemnification provision, were transferred to the Celotex Asbestos Settlement Trust. The Celotex Trust has been substituted for the Celotex Corporation in this litigation.

Pending are motions and cross-motions for summary judgment. The Celotex Trust has filed a motion for summary judgment on the basis of the indemnification provision (Doc. 291). Dana has filed a cross-motion for summary judgment as to that provision (Doc. 298) and motions for summary judgment on the basis of res judicata (Doc. 294), equitable discharge and release (Doc. 297), and late notice. (Doc. 299).

For the reasons that follow, the motion of the Celotex Trust for summary judgment shall be denied and Dana's cross-motion for summary judgment shall be granted. In addition, summary judgment shall be entered in favor of Dana on the basis that Panacon's merger of Philip Carey of New Jersey into itself materially altered the risks to Dana as indemnitor, thereby relieving Dana of any obligation to indemnify Philip Carey or its successors in interest, including Celotex and the Celotex Trust, under the indemnification agreement.[1]

### A. Celotex Trust's Motion for Summary Judgment and Dana's Cross-Motion (Docs. 291, 298)

The parties have filed cross-motions on the issue of the meaning of the indemnification provision in the 1969 stock purchase agreement. According to the Celotex Trust, the terms of the indemnification provision are clear and unambiguous, and they expressly allocate to Dana all of Smith & Kanzler Company's liabilities, including its asbestos liabilities, to the extent that those liabilities accrued prior to the 1969 stock purchase agreement.[2] Dana's cross-motion for summary judgment contends that any duty that it owes under the indemnification provision relates solely to losses or liabilities incurred by Philip Carey for the torts of Smith & Kanzler Company.

In the indemnification provision Dana agreed to "reimburse and indemnify" Philip Carey for the "obligations and liabilities" of Smith & Kanzler. As stated in *Pasternak v. Thrift Investment Co.,* 104 N.E.2d 712, 715–16 (Ohio C.P.1947):

> "Reimburse" has been defined as "to refund," "to place in the treasury or private coffer that which has been taken, lost or expended." Another meaning or definition is "to pay back to," "to render an equivalent," "to repay to." To repay of course means "to pay back what is owed or due, to recompense, to return, as to repay a loan." .... Certainly one can not be refunded or repaid or reimbursed that which he has not paid.

---

1. No decision is reached with regard to the other summary judgment motions and issues, because the decisions in favor of Dana on the issues of the interpretation of the indemnification agreement and the effect of Philip Carey of New Jersey's merger into Panacon resolve to finality the litigation between Dana and the Celotex Trust. To enter final judgment in this case, a decision as to the other issues is, therefore, unnecessary. As importantly, the issues raised by Dana's motion for equitable discharge due to the failure of the Celotex Plan of Reorganization to acknowledge and accommodate Dana's rights as a putative indemitor are complex and novel. Furthermore, those issues relate, at least in part, to the relationship between this Court and the Bankruptcy Court with its specialized jurisdiction. It is appropriate, accordingly, to refrain from addressing those issues in an advisory manner.

2. Dana does not contest some of the contentions in the Celotex Trust's motion for summary judgment. Among these are: 1) the potential hardship to Dana from enforcement of the indemnification provision does not make the provision ambiguous; 2) the unforeseeable magnitude of the potential liabilities is not material to interpretation of the indemnification provision; 3) claims for bodily injury from asbestos accrue on exposure; 3) claims for property damage accrue on installation; and 4) if otherwise obligated under the indemnification provision, Dana is liable for claims made after the date of the stock purchase agreement.

The Celotex Trust does not contest some of the points made in Dana's cross-motion. Among these are: 1) only Philip Carey, and not Smith & Kanzler, was a party to the stock purchase agreement; 2) the indemnification provision indemnified only Philip Carey, it did not indemnify Smith & Kanzler; 3) Smith & Kanzler was not a beneficiary of the indemnification provision; and 4) the Celotex Trust has no greater rights under the indemnification provision than Philip Carey had.

In light of this definition of the term "reimburse," which accords with the definition found in Black's Law Dictionary ("[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole"), Dana agreed to repay Philip Carey for monies paid by Philip Carey on account of the "obligations and liabilities" of Smith & Kanzler Company.

In Ohio, indemnity "arises from contract, express or implied, and is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement." *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St.2d 11, 13–14, 321 N.E.2d 787 (1975) (citing *Maryland Cas. Co. v. Frederick Co.*, 142 Ohio St. 605, 607, 53 N.E.2d 795 (1944)). In this case, the Celotex Trust, as successor to Philip Carey, seeks a ruling that Dana must reimburse the Trust for payments that the Trust will be compelled to pay for the asbestos-related torts of Smith & Kanzler Company. The basis for the Trust's claim for indemnification is its status as a successor to Philip Carey, to whom Dana made its indemnification commitment. Because Panacon, the successor to Philip Carey, merged the successor to Smith & Kanzler into itself in 1972, the Celotex Trust is also a successor to Smith & Kanzler Company. Thus, the Celotex Trust is liable for claims by persons exposed to Smith & Kanzler asbestos containing products or in whose buildings Smith & Kanzler asbestos was installed.

The indemnification provision of the 1969 stock purchase agreement states that Dana will "reimburse and indemnify" Philip Carey "against and in respect of: ...all obligations and liabilities of" Smith & Kanzler Company. The Celotex Trust claims

that under this provision Dana was required to compensate Philip Carey for all the liabilities of Smith & Kanzer, regardless of whether Philip Carey was itself legally obligated for such liability. Dana claims that, before it could become obligated to Philip Carey, that company must have been "damnified." To be damnified is to have incurred damage or loss;[3] thus, according to Dana, it would be liable for only those damages or losses incurred by Philip Carey because of Smith & Kanzler's tortious acts.

Historically, Ohio courts have differentiated between two distinct obligations: "liability," which arises because of a *commitment* to pay a sum certain, and indemnification, which arises following either a *payment* by or imposition (such as by entry of judgment) of an obligation to pay on the indemnified party. This distinction was described by the Ohio Supreme Court in *Wilson v. Stilwell*, 9 Ohio St. 467, 470 (1859):

> the doctrine seems to be now well established, ...., that if there be a contract to indemnify simply, and nothing more, then damage must be shown before the party indemnified is entitled to recover; but if there be an affirmative contract to do a certain act, or to pay a certain sum or sums of money, then it is no defense to say that the plaintiff has not been damnified; and that the measure of damages in such case is the amount agreed to be paid, or the proper expense of doing the act agreed to be done.

The Ohio Supreme Court repeated this principle in *Henderson–Achert Lithographic Co. v. John Shillito Co.*, 64 Ohio St. 236, 254–255, 60 N.E. 295 (1901):

---

**3.** "Damnification," according to Black's Law Dictionary, means "[t]hat which causes damage or loss." Webster's defines "damnification" as "the action of damnifying;" or "an infliction of injury or loss." To "damnify," according to Webster's, is "to cause loss or damage to" or to "damage, injure, wrong." To be "damnified" means, accordingly, to have suffered damage or loss.

There is an essential difference, in legal effect, between covenants of indemnity, strictly,-that is, of indemnity against loss,-and covenants to pay or assume or stand for the debt, or a surety's liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then becomes absolute, and the failure to pay is a breach of the express terms of the covenant; while those of the former class are not broken, and no right of action accrues, until the indemnitee has suffered a loss against which the covenant runs.

(citing *Wicker v. Hoppock*, 73 U.S. 94, 6 Wall. 94, 99, 18 L.Ed. 752, 753 (1867) (Under contracts of indemnity "the obligee cannot recover until he is actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well-settled distinction between an agreement to indemnify and an agreement to pay. In the latter case a recovery may be had as soon as there is a breach of the contract, and the measure of damages is the full amount agreed to be paid.")).

The Ohio Supreme Court has never repudiated or reformulated the distinction between contracts for indemnification and contracts to pay.[4]

▮▮▮▮ An Ohio bankruptcy court recently described and applied the distinction between a contract to indemnify and a contract to pay in *In re Highland Group, Inc.*, 136 B.R. 475, 478 (Bankr.N.D.Ohio 1992):

. If an agreement is to simply indemnify, and nothing more, then damage must be shown before the indemnitee is entitled to recover. On the other hand, however, if there is an agreement to stand for a debt or to pay a sum certain, then it is no defense that the indemnitee has suffered no loss.

In that case a contract between a retailer and one of its suppliers provided that the supplier "will indemnify and hold harmless J.C. Penney and J.C. Penney's agents and employees from and against any and all loss, liability or damage." *Id.* at 478–479. The court, pointing out that the "agreement contains no language to suggest that it is one to stand for a debt or pay a sum certain," concluded that "the agreement by

**4.** The cases most strongly supporting the position of the Celotex Trust (namely, that a contract of indemnification imposes an obligation on the indemnitor regardless of whether the indemnitee has been damnified) are *New York Cent. R. Co. v. General Motors Corp.*, 182 F.Supp. 273, 284 (N.D.Ohio 1960) (with agreement to indemnify against liability a breach occurs "the moment liability is imposed on the party to be indemnified and a cause of action at once arises," while with agreement to indemnify against loss "there is no breach of contract on which action can be maintained until obligee has sustained loss) and *Firemen's Ins. Co. v. Antol*, 14 Ohio App.3d 428, 429, 471 N.E.2d 831 (1984) (same). The court in *New York Central* did not acknowledge, discuss the significance of, or distinguish *Wilson v. Stilwell* and subsequent Ohio Supreme Court decisions restating its doctrine. Although the court in *Fireman's Fund* cited *Wilson*, it adopted the

statements of *New York Central*, without attempting to harmonize those statements with the holding in *Wilson*. Likewise, *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 513 N.E.2d 253 (1987), did not cite or address the scope of the indemnity provision at issue in that case; instead, the court adjudicated the enforceability of an agreement to indemnify the indemnitees for attorneys' fees. The *Wilson* decision is not cited in *Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 124, 443 N.E.2d 497 (1982), in which the indemnity provision pertained to "any damages and expenses arising from injury to anyone" at the hands of the indemnitor's employees.

In light of the complete absence of any Ohio decision, including, most importantly, a decision from the Ohio Supreme Court, that directly casts doubt on, much less invalidates, the doctrine of *Wilson v. Stilwell*, I am required to apply that doctrine in this case.

its title and its express terms is one of indemnity." *Id.* at 479.

Applying Ohio law, the Sixth Circuit has also recognized the distinction between contracts limited to indemnification and contracts to pay. In *In re Waller*, 494 F.2d 447, 452 (6th Cir.1974), a divorce agreement provided that the "husband shall pay and indemnify and hold the wife absolutely harmless from all existing obligations." Noting that "[n]owhere in the agreement is 'loss' mentioned; instead, there are promises to pay, to indemnify and to hold the wife *absolutely* harmless from existing marital obligations," the court stated that "[t]his terminology is more consistently interpreted as an indemnity against liability, not loss, and therefore the former wife's claim was sufficiently mature for her to seek relief." *See also Martin v. Bolenbaugh*, 42 Ohio St. 508, 514 (1885) (indemnitor agreed to pay judgments against indemnitee).

■ The distinction made by Ohio courts between contracts to indemnify and promises to pay, such as are made by a guarantor, surety, or bonding company, is not merely technical. That distinction has, as well, a practical effect. An indemnity contract does not give the injured party a claim directly against the indemnitor. Instead, the injured party can proceed only against the tortfeasor. Only if the tortfeasor has been found liable to the injured party does a cause of action arise under the indemnity contract. *See Tankrederiet Gefion A/S v. Hyman–Michaels Co.*, 406 F.2d 1039, 1042 (6th Cir.1969) (noting and citing to cases upholding "the general rule that an indemnitee must show actual liability to recover against an indemnitor").

■ Where there is a promise to pay, in contrast, the claimant can proceed directly against either the primary obligor or the guarantor, surety, or bonding company, and can do so directly and immediately on nonpayment of the obligation.

*Henderson–Achert Lithographic Co.*, *supra*, 64 Ohio St. at 256–57, 60 N.E. 295 ("a covenant, . . ., to pay or to assume or to stand for a debt on which a surety is bound, may be specifically enforced in chancery, after the maturity of the debt, if it be not then paid by the covenantor. . . . But on no sound principle can a court . . . compel an indemnitor to perform his covenant in advance of the happening of the contingency or event upon which, by its terms, it is to be performed.").

■ The Celotex Trust does not contend that the victims of Smith & Kanzler's torts had a direct claim against Dana. Instead, any direct cause of action would have been against Smith & Kanzler Company, or, arguably, against Philip Carey. Dana would be liable under the indemnification agreement only if such cause of action led to a judgment against Philip Carey. A judgment against Smith & Kanzler Company would not have given rise to a claim by either Smith & Kanzler or Philip Carey against Dana under the indemnification agreement because: a) Smith & Kanzler was not an indemnitee and b) Philip Carey was not liable for judgments against its wholly owned subsidiary.

Dana, accordingly, was not a guarantor, surety, or bondsman. It was only an indemnitor. It could be sued successfully under the indemnity agreement only on the basis of some loss or obligation imposed on Philip Carey for the torts of Smith & Kanzler Company.

The inability of the victims of Smith & Kanzler's torts to bring a direct claim against Dana supports Dana's argument that its obligation is merely to indemnify-to pay only when Philip Carey became damnified-rather than to pay on demand in the first instance. Under the stock purchase agreement, Dana agreed to be responsible for the liabilities of Smith &

Kanzler Company, but only to the extent that those liabilities resulted in damnification of, i.e., losses or damages to Philip Carey.

I also conclude, accordingly, that Dana was not obligated for all of Smith & Kanzler's liabilities upon their accrual. Instead, Dana was liable as an indemnitor to Philip Carey only after that company had been "damnified" as a result of the torts of Smith & Kanzler Company.

The Trust argues that the effect of Dana's argument is to read "liabilities" to mean "losses." (Doc. 304 at 8). I disagree: T the "source of the risk"(to use Dana's analytical terminology (Doc. 298 at 15))-the potential harm to Philip Carey-remains Smith & Kanzler's liabilities. There could be, however, no risk or harm to Philip Carey unless and until it was damnified-suffered loss or damage-for a Smith & Kanzler tort. At that point, and not before, it could turn to Dana for reimbursement and indemnification.

Under Ohio law, such is the legal meaning and practical effect of an agreement to indemnify. Whether the agreement referred to the losses or liabilities of Smith & Kanzler Company is immaterial-Dana's duty to indemnify is limited to compensating Philip Carey for the extent of its damnification-not for what Smith & Kanzler Company itself may have been liable. If a victim of Smith & Kanzler Company's torts could not recover against Philip Carey, then neither such victim nor Philip Carey can recover against Dana.

Dana bases its principal argument about the meaning of the indemnification provision, and I likewise base my ruling, on the basis of well-settled Ohio doctrines relating to contracts of indemnity. Dana also asserts that the parties to the stock purchase agreement gave a limited, rather than expansive, meaning to the phrase in § 6.1(c), "obligations and liabilities" of Smith & Kanzler Company. Several aspects of the agreement support Dana's contention.

One of these aspects is the different terminology used in the other subsections of the indemnification provision. Those subsections of § 6.1 state that Dana will "reimburse and indemnify" Philip Carey "against and in respect of"

(a) *any loss, liability or damage to [Philip Carey] or [Smith & Kanzler Company]*, in excess of the reserve for bad debt loss, if any, reflected in the Balance Sheet, resulting from the non-collection of any receivable (other than receivables owing by [Philip Carey] referred to in Section 2.2(b) hereof;

(b) *any loss, liability or damage to [Philip Carey] or [Smith & Kanzler Company]* arising from any breach of any representation or warranty contained herein; . . . .

(Emphasis supplied).

Section 6.1(c), in contrast, states that Dana will "reimburse and indemnify" Philip Carey "against and in respect of"

*all obligations and liabilities of [Smith & Kanzler Company]* whether accrued, fixed, contingent or otherwise, aggregating in excess of $10,000, arising on or before November 30, 1968, to the extent not reflected or reserved against in the Balance Sheet.

(Emphasis supplied).

In view of the difference in phrasing of § 6.1(c), the Celotex Trust asserts that the draftsmen of the stock purchase agreement knew how to use the term "losses" when they intended to compensate Philip Carey for losses. (Doc. 304 at 8). That being so, the Celotex Trust argument continues, the extent of Dana's indemnification obligation was not limited to losses, but encompassed all other liabilities as well.

This aspect of the Trust's argument focuses only on the omission of the term "losses" from § 6.1(c). The Trust overlooks the omission in § 6.1(c) of additional language, also found in subsections (a) and (b), which reads in pertinent part, "any loss, liability *or damage* to [Philip Carey] or [Smith & Kanzler Company]." (Emphasis supplied). In comparison with the reach of the obligation in subsections (a) and (b), and, as well, its applicability to both Philip Carey and Smith & Kanzler Company, the language chosen for § 6.1(c) must be viewed as limiting Dana's indemnification obligation. The Celotex Trust, however, would read the coverage of that section as though it were as broad as, if not broader than, the coverage of § 6.1(a) and § 6.1(b). That is not an acceptable reading of subsection (c) in light of the expansiveness of the other two subsections.

The broader scope of subsections (a) and (b) reflects, in part, Dana's refusal to include Smith & Kanzler Company as an indemnitee under the stock purchase agreement, which likewise shows an agreement to limit the scope of § 6.1(c). The Celotex Trust acknowledges that Smith & Kanzler Company was not an indemnitee under the agreement. But it argues that its purposeful exclusion from the indemnity provision by the negotiators cannot be considered in light of the parol evidence rule. Dana does not, however, make reference to exclusion of Smith & Kanzler Company as an indemnitee to vary the meaning of the contract. That would be Dana's purpose, which would be improper under the parol evidence rule, if the stock purchase agreement had included Smith & Kanzler Company as an indemnitee, and Dana was offering the negotiating history as proof that such was not the parties' intention. *Cf. Browne v. Browne*, 1995 WL 89397 *3 (Summit Cty.App. March 1, 1995) (maker of note obligating him to pay interest could not offer parol evidence to show that parties had not actually intended that interest be paid).

Instead, Dana refers to the negotiating history to show that exclusion of Smith & Kanzler Company as an indemnitee was deliberate. Deliberate exclusion of Smith & Kanzler Company as an indemnitee shows, in turn, that Dana and Philip Carey were limiting, rather than expanding, the scope of the indemnification obligation in § 6.1(c).

The intent to limit the extent of the indemnification obligation is also apparent from § 7.6 of the stock purchase agreement, which states:

> 7.6. *Binding Effect, Benefits.* This Agreement shall inure to the benefit of and be binding on the parties hereto, their successors and assigns; nothing in this Agreement expressed or implied is intended to confer on any other person, other than the parties hereto, any rights, remedies, agreements, understanding, obligations or liabilities under or by reason of this Agreement.

Pursuant to this provision, the stock purchase agreement conferred no benefit on Smith & Kanzler Company. That company, which was neither an indemnitee under nor otherwise entitled to benefit from the stock purchase agreement, was not, accordingly, relieved of its obligations and liabilities as a result the stock purchase agreement or any of its terms-including the indemnification provision.

The limited, rather than expansive, understanding of the parties about the indemnification provision is likewise apparent from the handling in the stock purchase agreement of a $900,000 note given by Smith & Kanzler Company to Dana. That note was transferred pursuant to the stock purchase agreement to Philip Carey, so that Smith & Kanzler Company owed that $900,000 obligation to Philip Carey.

Had the parties to the stock purchase agreement, as asserted by the Celotex Trust, intended to make Dana responsible for all of Smith & Kanzler Company's pre-closing obligations and liabilities, the stock purchase agreement would not have transferred this note (and the risk that it might not be repaid) from Dana to Philip Carey. The fact that the note was purchased by and transferred to Philip Carey without recourse against Dana is a further indication that the parties understood that Dana was not responsible for any of Smith & Kanzler Company's obligations or liabilities.

Dana also points out that interpreting the indemnification provision as making Dana liable for all of Smith & Kanzler Company's obligations and liabilities would make other warranties and representations in the stock purchase agreement surplusage. In § 2.8 of the stock purchase agreement, Dana warranted that, in accordance with generally accepted accounting principles consistently applied, Smith & Kanzler Company's balance sheet made full and adequate provision for all obligations and liabilities, fixed or contingent, of that company, and that no such obligations or liabilities in an aggregate amount greater than $10,000 were not reflected or reserved against in the balance sheet. Under this provision, Dana was not liable for any undisclosed liability of Smith & Kanzler Company that, pursuant to generally accepted accounting principles consistently applied, need not have been disclosed on the Smith & Kanzler Company balance sheet.

The effect of § 2.8, therefore, was to allocate a category of Smith & Kanzler Company's liabilities to Philip Carey. This allocation is inconsistent with the claim of the Celotex Trust that all of Smith & Kanzler Company's pre-closing obligations and liabilities were to be assumed by Dana under the indemnification agreement.

I conclude, therefore, that the indemnification provision of the stock purchase agreement between Dana and Philip Carey limited Dana's obligation to instances in which Philip Carey was damnified, either by an unsuccessful defense of a claim based on a tort by Smith & Kanzler Company or payment of such claim. My conclusion is based on the plain meaning of § 6.1(c), whereby Dana agreed to "reimburse and indemnify" Philip Carey for the "obligations and liabilities" of Smith & Kanzler Company. This provision was less expansive than the other subsections of the indemnification agreement. Those provisions, unlike § 6.1(c), benefit Philip Carey and Smith & Kanzler Company alike and equally. With regard to § 6.1(c), however, the parties excluded Smith & Kanzler Company as an indemnitee.

To read the indemnification provision as the Celotex Trust would have it read-as obligating Dana for all Smith & Kanzler Company's pre-closing obligations and liabilities-also would conflict with the parties' agreement to a) transfer Smith & Kanzler Company's $900,000 note to Philip Carey and b) allocate any undisclosed obligations and liabilities to Philip Carey which need not have been disclosed in accordance with generally accepted accounting principles.

Section 6.1(c) must be read, moreover, in light of Ohio's common law of indemnification, as expressed in *Wilson v. Stillwell,* 9 Ohio St. 468, 470 (1859), and subsequent cases. Those cases make clear that an agreement to indemnify differs from a commitment to pay. Finally, I agree with Dana's argument that, as a result of the stock purchase agreement, Philip Carey got what Dana had had-namely a wholly owned subsidiary, whose liabilities could not, as a result of shareholder immunity, be imposed on its parent.

In light of the foregoing, Dana's cross-motion for summary judgment on the issue

of contract interpretation (Doc. 298) shall be granted, and the Celotex Trust motion for summary judgment as to that issue (Doc. 291) shall be denied.

## B. Equitable Discharge and Release

■ Dana has moved for summary judgment on the basis that whatever obligations it may have under the stock purchase agreement have been discharged as a result of the merger of Philip Carey of New Jersey into Panacon. According to Dana, this merger eliminated the shareholder immunity defense which Dana, prior to the stock purchase agreement, and Panacon (successor to Philip Carey of Ohio), prior to such merger, had enjoyed as protection against claims based on the torts of Smith & Kanzler Company.[5] Dissolution of the corporate veil between parent (Panacon) and wholly owned subsidiary (Philip Carey of New Jersey) necessarily had the effect, Dana argues, of increasing the risk and potential liability to Dana under the indemnification provision. Its indemnitee's enhancement of its risk, Dana asserts, discharges it from its obligations as indemnitor.

The Celotex Trust does not dispute Dana's premise that the merger of Philip Carey of New Jersey into Panacon eliminated the defense of shareholder immunity that Panacon enjoyed vis-a-vis claims against its wholly owned subsidiary, Philip Carey of New Jersey. The effect of such immunity, which had been enjoyed by Dana when it owned Smith & Kanzler and, as well, by Philip Carey of Ohio after it bought Smith & Kanzler, was to protect the parent entirely from claims based on Smith & Kanzler's torts, including its asbestos torts. Through its dissolution of Philip Carey of New Jersey, Panacon voluntarily abandoned the right to claim that defense, thereby exposing itself to liability for Smith & Kanzler's torts. To the extent that Panacon might suffer loss which otherwise it would not have suffered, and thereon sought to recover against Dana under the indemnification agreement, Dana's exposure under the agreement would have been increased.

Because Dana's exposure was increased, however, it was relieved of its obligation to indemnify Panacon and its successor, the Celotex Trust. This is the rule in Ohio, as the Ohio Supreme Court made clear in *Cambria Iron Co. v. Keynes,* 56 Ohio St. 501, 511, 47 N.E. 548 (1897):

> We do not doubt the soundness of the rule that discharges a guarantor from liability whenever the terms of a contract he has guaranties [sic] have been materially altered. That a guarantor or surety may stand upon the very terms of his undertaking, is a doctrine sustained by the unbroken current of authority. *Boalt v. Brown,* 13 Ohio St. 364; *Patterson v. McNeeley,* 16 Ohio St. 348; *Thompson v. Massie,* 41 Ohio St. 307; *Bank v. Lane,* 8 Ohio St. 405; *Hall v. Williamson,* 9 Ohio St. 17; *Bank v. Carrol's Adm'rs,* 5 Ohio, 207; *State v. Crooks,* 7 Ohio, 573; *State v. Medary,* 17 Ohio, 554; *McGovney v. State,* 20 Ohio, 93; *Smith v. Huesman,* 30 Ohio St. 662; *Palmer v. Yarrington,* 1 Ohio St. 253; *Stone v. Rockefeller,* 29 Ohio St. 625; *Morgan v. Boyer,* 39 Ohio St. 324. The citations of cases bearing on this proposition could be indefinitely extended.

*Accord Koppitz–Melchers Brewing Co. v. Schultz,* 68 Ohio St. 407, 67 N.E. 719 (1903) (syllabus) (failure of principal to

---

**5.** On the basis of shareholder immunity, Dana successfully defeated claims that it was vicariously liable for Smith & Kanzler Company's asbestos-related torts. No reason appears in the present record to doubt that had Panacon (successor to Philip Carey of Ohio) kept Philip Carey of New Jersey (successor to Smith & Kanzler Company) as a wholly owned subsidiary. Panacon could successfully have asserted the same defense.

require payment per terms of contract released surety from liability); *Chase Bank of Ohio v. Brookstone Ohio Partnership*, 1990 WL 20104, \*2 (Ohio App. 12 Dist.) ("It is well settled that a guarantor is discharged from liability whenever the terms of the contract or the nature of the obligation guaranteed is materially altered without the guarantor's consent.").[6]

This is also the universal rule elsewhere. *United States v. Schwartz*, 90 F.3d 1388, 1393 (8th Cir.1996) (indemnitee's bad faith discharges the indemnitor to the extent the indemnitor has been damaged as a result of that act); *American Export Isbrandtsen Lines, Inc. v. United States*, 390 F.Supp. 63, 68 (S.D.N.Y.1975) ("indemnitee has a duty to act reasonably under all the circumstances so as to protect the indemnitor against liability."); *Risk v. Risk*, 138 Ind.App. 224, 213 N.E.2d 334, 336 (Ind. App.1966) (indemnitee failed to assert defense to suit). *Accord, e.g., Rochelle Bail Agency, Inc. v. Maryland Nat. Ins. Co.*, 484 F.2d 877 (7th Cir.1973); *General Insurance Co. of America v. Fleeger*, 389 F.2d 159, 161 (5th Cir.1968); *Hiern v. St. Paul–Mercury Indemnity Co.*, 262 F.2d 526, 529 (5th Cir.1959); *United Pac. Ins. Co. v. Johnson–Gillanders Co.*, 280 F.Supp. 90, 94 (D.N.D.1968); *United States Fire Ins. Co. v. Johansen*, 270 Cal. App.2d 824, 76 Cal.Rptr. 174, 178 (Cal. App.1969); *United States Fidelity & Guaranty Co. v. Putfark*, 180 La. 893, 158 So. 9, 10 (La.1934); *New Amsterdam Cas. Co. v. Lundquist*, 293 Minn. 274, 198 N.W.2d 543, 548 (Minn.1972); *Holiday Inns, Inc. v. Thirteen–Fifty Inv. Co.*, 714 S.W.2d 597, 603 (Mo.App.1986); *United States Fidelity & Guaranty Co. v. Paulk*, 15 S.W.2d 100, 105 (Tex.Civ.App.1929).

In view of this rule, Panacon's abandonment of the shareholder immunity defense it enjoyed while it held Smith & Kanzler's successor, Philip Carey of New Jersey, as a wholly owned subsidiary substantially increased the potential risk to Dana. As I have found, Dana was obligated to indemnify Philip Carey only for those liabilities as to which Philip Carey had been damnified. The extent of Philip Carey's possible damnification increased significantly when Panacon shredded the corporate veil between it and the successor to the original Smith & Kanzler Company.

Because Panacon, as successor to the indemnification agreement in the stock purchase agreement between Dana and Philip Carey, materially altered the risk to which Dana was exposed, Dana is discharged from liability thereunder. Dana is, accordingly, entitled to summary judgment as to this aspect of its claim for equitable discharge.

### Conclusion

In light of the foregoing, it is hereby

ORDERED THAT:

1. Summary judgment be entered in favor of Dana and against the Celotex Trust on the parties' cross-motions for summary judgment (Doc. 291, 298); and

---

**6.** The Celotex Trust suggests that cases stating this rule with regard to surety relationships are inapplicable to contracts of indemnity. The courts, however, make no distinction between the obligations owed by an indemnitee to an indemnitor and those owed by a surety to a principal. *Denton v. Fireman's Fund Indem. Co.*, 352 F.2d 95, 99 (10th Cir.1965) (applying rule to uncompensated guarantor); *American Cas. Co. v. Idaho First Nat'l Bank*, 328 F.2d 138, 143 (9th Cir.1964) (noting that "the situation of the indemnitor is analogous to that of a surety"); *New Amsterdam Cas. Co. v. Lundquist*, 293 Minn. 274, 198 N.W.2d 543, 548 n. 3 (Minn.1972) ("In several instances, the rules have been made in the case of a principal and surety, rather than on indemnitee and indemnitor. But the relationship is so similar that there appears no reason for differentiating the rules as they apply to one pair or the other").

2. Summary judgment be, and the same hereby is entered in favor of Dana and against the Celotex Trust on the issue of discharge due to the merger of the successor of Smith & Kanzler Company into the successor of Philip Carey of Ohio.

So ordered.