[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Appellant, Stewart Title Guaranty Company ("Stewart"), appeals from a judgment entry of the Portage County Court of Common Pleas entered in favor of appellees Heritage Title Company, Inc. ("Heritage"), and its President and sole owner, Louis Dudek ("Dudek"), following a bench trial arising out of a quiet title action in which Stewart sought to recover attorney fees and costs pursuant to an underwriting agreement between Stewart and Heritage.
 {¶ 2} To understand the issues on appeal, it is necessary to outline the substantial background and earlier litigation from which this case arose. On October 1, 1985, Stewart and Heritage executed a Title Insurance Underwriting Agreement. Under the terms of the agreement, Heritage was a title insurance policy issuing agent for Stewart, the underwriter.
 {¶ 3} In 1972, Calvin Dix and Christine Dix ("Dixs"), entered into a land contract to sell approximately nine acres of real estate located in Palmyra Township, to Neal Casto and Judy Casto ("Castos"). This instrument was recorded. In 1995, the Dixs, by warranty deed, transferred two of the total nine acres under the land contract to the Castos.
 {¶ 4} In 1989, Calvin Dix transferred real property in Palmyra Township to James Sanders and Deborah Sanders ("Sanders"), by warranty deed. However, the property transferred by the Dixs to the Sanders included the remaining seven acres of land under the land contract between the Dixs and the Castos. The Sanders then mortgaged the parcel to Midfirst Bank in order to finance the purchase.
 {¶ 5} With respect to the Dix and Sanders real estate transaction, Stewart acted as the underwriter for the title insurance policies that were issued by Heritage. Specifically, pursuant to the underwriting contract, Stewart underwrote and Heritage issued an owner's policy of title insurance with a face value of $65,000, and lender's policy of title insurance.
 {¶ 6} Sometime in 1993, Heritage and Stewart received notice from the Sanders of a potential title claim as to ownership of the seven-acre tract, based upon the Castos' earlier recorded land contract. Heritage contacted Stewart and forwarded the Sanders' case file to Stewart for investigation. No further action was taken by Stewart until 1998, when the quiet title action was commenced. On July 12, 1993, Dudek sold Heritage.
 {¶ 7} On March 17, 1998, the Castos commenced a quiet title action in the Portage County Common Pleas Court. Sanders, and Midfirst Bank, the mortgage holder on the Sanders' property, were named as defendants. Upon the commencement of the lawsuit, Sanders and Midfirst put Stewart on notice of the claim under the terms of their title polices. Stewart retained counsel to represent the interests of its insured, the Sanders, and answered the complaint on September 25, 1998. Sanders also filed a third-party complaint against Heritage alleging negligence in failure to discover the prior land contract during the title examination of the property. In response, Heritage filed a third-party complaint, counterclaim, and cross-claim against Stewart for a duty to defend and to indemnify Heritage under the underwriting agreement. Stewart then filed a counterclaim against Heritage for indemnity under the underwriting agreement, and also a "fifth-party complaint" against Dudek, to hold Dudek personally liable for any obligations owed by Heritage pursuant to the underwriting agreement. This claim was based upon the allegation that Heritage had sold all of its assets and gone out of business.
 {¶ 8} On March 3, 2000, the court issued an order granting the motion for summary judgment filed by Sanders against Heritage. The court found, "[i]t is clear that Heritage breached its contractual duties to Sanders. Sanders by hiring Heritage, expected and should have received a proper review of the title to the property they were buying. In that Heritage failed, mistakenly, to find the prior Casto transfer, was a breach going to the essence of the parties' contract. Thus, the Sanders should be granted judgment against Heritage on their claim for breach of contract. * * * [T]he Sanders are hereby granted judgment against Heritage that Heritage is liable to the Sanders for damages flowing from the breach of contract."
 {¶ 9} Thereafter, Stewart filed a motion for summary judgment against Heritage on its counterclaim for indemnity. Heritage also filed a motion for summary judgment on the issue that Stewart had a duty to defend Heritage in the action filed by Sanders under the terms of the underwriting agreement.
 {¶ 10} On January 8, 2001, summary judgment was entered as to both motions filed by Stewart and Heritage. The trial court held that under the terms of the underwriting agreement, Stewart owed a duty to defend Heritage as to the action filed by the Sanders against Heritage, and in turn that Stewart was entitled to indemnification from Heritage for "the cost in defending the claim of the Sanders."
 {¶ 11} On August 2, 2002, a settlement agreement and stipulated entry as to the underlying quiet title action, was entered by the court. According to the agreement, Dudek would pay the sum of $15,000 directly to the Castos in return for a transfer of title to Sanders. Although stipulating to the settlement, Stewart paid nothing in the settlement. The agreement expressly reserved the pending claims of Heritage against Stewart and Stewart against Heritage and Dudek.
 {¶ 12} The remaining issues under the underwriting agreement between Heritage and Stewart, and the complaint against Dudek on personal liability, proceeded to trial on April 29, 2004. In a June 24, 2004 judgment entry, the court found in favor of Heritage and Dudek, and denied all claims of Stewart. In the judgment entry, the court made the following conclusions of law: "(1) Stewart, as the insurer, had notice of the claim in 1993 and apparently did nothing to resolve the matter, to mitigate the loss or avoid litigation. [Stewart] had a contractual obligation to pay claims and provide a defense to Heritage. (2) Stewart never suffered any loss under the policy as the entire matter was resolved by and paid by Heritage and Dudek. Any fees or expenses are only triggered by a loss under the underwriting contract."
 {¶ 13} On July 24, 2004, Stewart filed a notice of appeal from the judgment entry of June 24, 2004.
 {¶ 14} On August 6, 2004, the court entered a judgment entry, consistent with its findings of the June 24, 2004 judgment entry. Ohio appellate procedure provides that when a notice of appeal is filed after a judgment is announced but before it is entered, such notice is treated as filed immediately after the judgment in entered. App.R. 4(C).
 {¶ 15} Thus, Stewart filed a timely appeal and presents the following assignments of error for our consideration:
 {¶ 16} "[1.] The trial court erred to the prejudice of Stewart Title Guaranty Company by failing to find Heritage Title Company liable to it for the entire loss it incurred with respect to the underlying title claims, including the cost of defending such claims.
 {¶ 17} "[2.] The trial court erred to the prejudice of Stewart Title by failing to award reasonable attorney's fees against Heritage Title that it incurred in defending the underlying title claims.
 {¶ 18} "[3.] The trial court erred to the prejudice of Stewart Title by failing to find Heritage Title's sole owner, Louis Dudek, personally liable for Heritage Title's liability and indebtedness to Stewart Title."
 {¶ 19} Under its first assignment of error, Stewart admits it suffered no loss under the policy issued to Sanders, and that it did not defend Heritage. However, Stewart argues under the terms of the underwriting agreement, it is entitled to reimbursement of all attorney fees and costs from Heritage, for the defense of Sanders, the third-party plaintiff in the underlying quiet title action.
 {¶ 20} A court must interpret a contract so the intent of the parties may be ascertained and given effect. Moyer v. Brown, 11th Dist. No. 2001-T-0126, 2002-Ohio-4517, at ¶ 20. When a court is construing the meaning of a contract, "`the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id., quoting In re Murray, 11th Dist. No. 2000-T-0152, 2002-Ohio-1686, at ¶ 11. If contractual terms are unambiguous, a court may not fashion a new contract or interpret contractual terms in a manner not expressed by the clear intent of the parties. Alexander v. BuckeyePipeline Co. (1978), 53 Ohio St.2d 241, 246. The objective meaning of the words used in the contract control. Yaroma v. Griffiths (1995),104 Ohio App.3d 545, 552.
 {¶ 21} If the contract is clear and unambiguous, then its interpretation is a matter of law that an appellate court reviews de novo. Nationwide Mut. Fire Ins. Co. v. Guman Brothers Farm (1995), 73 Ohio St.3d 107,108. National City Bank v. Concorde Controls, Inc., 11th Dist. No. 2001-L-113, 2002-Ohio-6578, at ¶ 24.
 {¶ 22} In the contract between Stewart and Heritage, the provisions relating to loss are as follows:
 {¶ 23} Paragraph 2(D) states:
 {¶ 24} "UNDERWRITER [Stewart] shall defend at its own expense all actions and pay all losses under policies issued pursuant to this Agreement, subject to the right of reimbursement in paragraph 5 hereof."
 {¶ 25} Paragraph 5 states:
 {¶ 26} DIVISION OF LOSS AND LOSS EXPENSE
 {¶ 27} "A. On each loss under a title policy issued pursuant to this agreement not due to [Heritage's] negligence or fraud, [Heritage] shall be liable to [Stewart] for the first $2,500.00 of such loss. The term loss shall include the amount paid to or for the benefit of the insured as well as loss adjustment expense including any cost of defending the claim resulting in the loss.
 {¶ 28} "B. On each such loss due to the negligence, fraud or intentional act or omission of [Heritage] or its employees, representatives, or agents, [Heritage] shall be liable to [Stewart] for the entire amount of such loss. Negligence as the term is used herein, includes, but is not limited to the failure of the title plant, failure to discover or report any instrument of record affecting title, violation of escrow instructions, failure to follow [Stewart's] instructions, and the failure to prepare a title policy in a manner that properly reflects any instrument contained in the search of title."
 {¶ 29} First, we note that Stewart is seeking reimbursement of attorney fees and costs under paragraph 5B of the underwriting agreement's indemnity clause alleging Heritage was negligent "for failure to discover or report any instrument of record affecting title."
 {¶ 30} "Indemnity arises from contract, * * * and is the right of a person, who has been compelled to pay what another should have paid to require complete reimbursement." Worth v. Aetna Cas. and Sur. Co.
(1987), 32 Ohio St.3d 238, 240.
 {¶ 31} Here, the trial court determined in its earlier summary judgment that Heritage committed an error in failing to discover or report the findings of the prior recorded land contract and, therefore, Stewart was entitled to indemnity for "the entire amount of loss resulting from Heritage's negligent title search."
 {¶ 32} The term "loss" for reimbursement purposes is not defined in section (B) of paragraph 5, but it is defined in section (A) of paragraph 5. Stewart asserts that the definition of the term "loss" as defined in paragraph 5A should apply to the paragraph of 5B.
 {¶ 33} "Where a contract gives a precise meaning to a particular term, the term should be construed consistently as having that meaning throughout the contract, absent some evidence to the contrary." Sherockv. Ohio Mun. League Joint Self-Insurance Pool, (2004), 11th Dist. No. 2003-T-0022, 2004-Ohio-1515, at ¶ 13. As both subsections of paragraph 5(A) and (B) address reimbursement of loss, we find the same definition of reimbursable loss should apply to both 5(A) and 5(B).
 {¶ 34} Paragraph 5A defines loss as follows: "[t]he term loss shall include the amount paid to or for benefit of the insured as well as a loss adjustment expense, including any cost of defending the claimresulting in the loss." (Emphasis added.)
 {¶ 35} Here, we find the term "loss" includes two types of loss. The first loss is loss under the policy "paid to or on behalf of insured," as that type of loss is consistent to the loss that triggers the right of reimbursement at the beginning of the paragraph 5(A). The second loss is a loss adjustment expense, which includes any cost of defending the claimresulting in the loss. Thus, attorney fees and court costs are payable pursuant to loss adjustment expense, but only to the extent these fees are a result of defending a claim that results in a loss, under the policy, due to the negligence of Heritage. Put another way, if there are no payments paid by Stewart under a policy of title insurance paid on or behalf of Heritage as the result of defending a claim, then there is no right of reimbursement for attorney fees and costs. This language is unambiguous, and is a reasonable interpretation that reconciles the language of paragraph 2D with the reimbursement provision under paragraph 5. Under 2D, Heritage could only be held liable for attorney fees if Stewart paid the underlying claim on behalf of Heritage. Paragraph 2D states that Stewart "shall defend at its own expense all actions and pay all losses under polices issued" pursuant to the underwriting agreement, "subject to the right of reimbursement in paragraph 5 hereof."
 {¶ 36} Terms under a contract are to be given their reasonable interpretation in keeping with the parties' intent. Progressive SpecialtyIns. Co. v. Easton (1990), 66 Ohio App.3d 177, 180. When reviewing these provisions together, we conclude that the definition of loss as explained above should apply to the reimbursement provisions of paragraph 5. Further, Stewart breached its duty to defend under the underwriting contract and failed to pay any loss on behalf of Heritage.
 {¶ 37} We must next determine whether appellant suffered a "loss" under the policy, so as to trigger reimbursement.
 {¶ 38} If a contract provides indemnity against loss, the alleged indemnitor becomes liable and the cause of action accrues when the person seeking indemnity suffers a loss. Fireman's Ins. Co. of Newark, NewJersey v. Antol (1984), 14 Ohio App.3d 428, 429.
 {¶ 39} In this case, the Castos brought a quiet title action against Sanders and Midfirst Bank. Sanders filed a third-party complaint against Heritage for negligence and breach of contract for the failure to discover the prior land sale in issuing their title policy. The trial court granted summary judgment against Heritage, in favor of Sanders, after Heritage retained and paid for its own defense, as Stewart failed to do so. Heritage, through Dudek, subsequently paid the sum of $15,000 to the Castos as settlement under the quiet title action. Stewart paid nothing in the settlement. At the April 29, 2004 trial, William Zabkar, general underwriting counsel and chief claims counsel for Stewart testified as follows:
 {¶ 40} Q: "Did Stewart pay the loss in this case to get it settled?"
 {¶ 41} A: "Stewart paid the loss of the insured, yes, to get the land for them, yes.I'm sorry, no, Stewart did not, Mr. Dudek paid that." (Emphasis added.)
 {¶ 42} We agree with the trial court's finding that because Stewart paid no loss on behalf of the insured under the policy, it is not entitled to attorney fees and costs.
 {¶ 43} Stewart next argues that the trial court erred by its finding that it owed a duty to defend Heritage and "suggested" that such failure acted as a complete bar to recovering its loss.
 {¶ 44} In its judgment entry of June 24, 2004, the court stated:
 {¶ 45} "Stewart Title, as the insurer, had notice of the claim in 1993 and apparently did nothing to resolve the matter, to mitigate the loss, or avoid litigation. They had a contractual obligation to pay claims and provide a defense to Heritage.
 {¶ 46} "Stewart never suffered any loss under the policy as the entire matter was resolved and paid by Heritage and Dudek. Any fees or expenses are only triggered by a loss under the underwriting contract."
 {¶ 47} Paragraph 2(D) of the underwriting agreement provides: "[Stewart] shall defend at its own expense all actions and pay all losses under policies issued pursuant to this agreement, subject to the right of reimbursement in paragraph 5 hereof."
 {¶ 48} According to 5(B), we find reimbursement for "costs," i.e., attorney fees and costs are only recoverable "* * * in defending claims resulting in the loss." Here, Stewart seeks attorney fees for defense of itself and for its defense of the Sanders. Stewart never defended Heritage and made no payments to or on behalf of Sanders under the policy.
 {¶ 49} The action filed by the Sanders against Heritage was based on the title search and the title policy issued. The underwriting contract provided that Stewart was obligated to defend the action filed by Sanders against Heritage in this case. It is undisputed that Stewart failed to defend Heritage. Indeed, Heritage filed an answer denying liability and defended itself. Heritage filed a complaint against Stewart seeking to enforce the contractual obligation of Stewart to defend.
 {¶ 50} Stewart asserts that it should be excused from a duty to defend Heritage because the cost of such defense would have been a part of an eventual loss for which Heritage would have to reimburse Stewart pursuant to 5(B) of the underwriting contract.
 {¶ 51} There is an essential difference between the duty to defend and the duty to indemnify. The duty to defend depends upon the allegations in the underlying complaint. An insurer's duty to defend is separate and distinct from its duty to indemnify. Erie Ins. Exchange v. Colony Dev.Corp. (June 12, 2001), 10th Dist. No. 00AP-1334 and 00AP-1335, 2001 Ohio App. LEXIS 2589, at 6; Natl. Eng. Contracting Co. v. United StatesFid. Guar. Co., 10th Dist. No. 03AP-435, 2004-Ohio-2503. Once a duty to defend is recognized, speculation about the insurers ultimate obligation to indemnify is premature until facts excluding coverage are revealed during the defense of the litigation. Natl. Eng. ContractingCo. at ¶ 15.
 {¶ 52} In this case, Sanders filed a complaint against Heritage, through defense counsel provided by Stewart, and thus, in essence, Stewart provided the legal assistance that resulted in the third-party complaint against Heritage for negligence and breach of contract.
 {¶ 53} Section 2 D of the agreement sets forth the duty of Stewart to defend all claims, and provide all expenses subject to reimbursement pursuant to section 5. The underwriting agreement was between Heritage and Stewart, as such, there was privity of contract between Heritage and Stewart. Thus, Stewart had a duty to defend Heritage, and only upon performance of that duty would the reimbursement clause of 5(B) be triggered.
 {¶ 54} In Ohio, indemnity arises from contract, express or implied, and is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement. Worth at 241;Fireman's Ins. Co of Newark, New Jersey at 428.
 {¶ 55} "Reimburse" has been defined as to refund, to place in the treasury or private coffer that which has been taken, lost, or expended. Another meaning or definition is to pay back to, to render an equivalent, to repay to. To repay of course means to pay back what is owed or due, to recompense, to return, as to repay a loan. Certainly one cannot be refunded or repaid or reimbursed that which he has not paid.Dana Corp. v. Fireman's Fund Ins. Co. (N.D. Ohio 1999),169 F.Supp. 2d 732, 735
 {¶ 56} Appellant further contends that the court erred when it found the failure to mitigate its losses and avoid litigation precluded its recovery under the underwriting agreement for attorney fees and costs.
 {¶ 57} The trial court held that Stewart, as the insurer, had notice of the claim in 1993 and apparently did nothing to resolve the matter, to mitigate loss or avoid litigation.
 {¶ 58} Here, nothing in the record reveals any attempts by Stewart to do so. Stewart had notice of the claim in 1993. Heritage sent correspondence to Stewart and discussed the matter with Stewart in a follow up telephone conversation. Heritage, pursuant to Stewart's request, forwarded the Sanders file to Stewart at that time. Stewart is now seeking the sum of $78,538. in attorney fees and costs in this case, which accrued through April 2002. The property subject to the quiet title action was a seven-acre parcel of land with an estimated fair market value of $7,000. The underlying cause of action was settled by Dudek in October 2001. Stewart's attorney fees and costs include the costs of pleadings, depositions, and attorney research regarding Stewart's claims against Heritage and Dudek. We note the same law firm represented both Sanders and Stewart. Stewart failed to pay any claims or losses under the title policy issued, pursuant to its duty in the underwriting contract.
 {¶ 59} In this case, Stewart should have undertaken its duty to defend Heritage, paid all losses, and reserved its right to assert defenses for reimbursement as that later became known.
 {¶ 60} For the foregoing reasons, Stewart's first assignment of error is without merit, Stewart's second and third assignments of error are rendered moot.
 {¶ 61} The judgment of the trial court is affirmed.
Ford, P.J. O'Neill, J., concurs.